**STATE of Missouri, Plaintiff,**

v.

**James W. BOOKER, Defendant.**

No. 35979.

Missouri Court of Appeals,
St. Louis District,
Division One.

Aug. 10, 1976.

Joseph W. Downey, Asst. Public Defender, William J. Shaw, Public Defender, Clayton, for defendant.

John C. Danforth, Atty. Gen., Christopher R. Brewster, Preston, Dean, Asst. Attys. Gen., Jefferson City, Courtney Goodman, Jr., Pros. Atty., George R. Westfall, Asst. Pros. Atty., Clayton, for plaintiff.

RENDLEN, Judge.

James W. Booker appeals his conviction of rape, § 559.260 [1] and sentence of life imprisonment under the second offender act, § 556.280, the court having considered his prior convictions of burglary second degree, stealing and rape.

Defendant assigns as error: (1) his prior acquittal of burglary first degree and robbery first degree charges arising from the same transaction constitutes a bar to this trial for rape under the doctrine of collateral estoppel; (2) defendant's acquittal of the burglary and robbery worked to preclude evidence of those crimes and erroneous admission of such testimony placed defendant "under double jeopardy"; and (3) permitting a former prosecutor's testimony as to his personal belief of defendant's guilt constituted reversible error. Sufficiency of the evidence supporting the verdict is not challenged.

On May 11, 1971 at approximately one p. m., Mrs. C___ S___ returned home from grocery shopping accompanied by her 2½ year old son. While in the kitchen she heard a sound from the living room and going there, saw defendant holding a knife. He asked if anyone else was in the house. She told him her husband was in the basement to which defendant retorted she was lying, that he knew she was alone. He asked if she had any money; she replied in the negative and he again accused her of lying. She then told him the only money she had was in her purse in the bedroom, whereupon defendant forced her to the bedroom where he took a small amount of money from her purse. Then, threatening Mrs. S___ and her infant son with the knife, defendant forced her to disrobe and acquiesce in a sexual assault in the presence of her son. Afterward defendant permitted Mrs. S___ to dress and holding her son at knife point, ordered her to start her automobile for him. After she had done so and returned to the house, defendant took her wedding rings, threatened destruction of her home and family if she called the police and left in the car. Immediately she attempted to use the phone but finding the cord cut, went to a neighbor's house and phoned the police, giving her assailant's description. A few days later, defendant was arrested by the Wellston police and having first been given "Miranda" warnings, admitted the essential details of the crime. The testimony of arresting Officer Schwartz as to defendant's confession, follows:

"A. And then he told me, he says, 'yes'. He says that he was at the Tri-City Grocery Store there on Vernon, he had left there and walked north aways and turned down the street and he saw a woman get out of a car and she fascinated him.

Q. Now did he use the word 'fascinated' or is that your word?

A. That was his word.

Q. Go on.

A. And then he says he went up to the door and pulled on the door and the door came open. The inner door was open, but the screen door was locked, and he pulled on that door, he went inside and told the woman he wanted to have intercourse

---

1. All statutes referred to in this opinion are RSMo 1969, V.A.M.S., unless otherwise noted.

with her, and she refused. He told her if he didn't have intercourse with her he was going to beat her up. She said: 'If you don't harm my child, all right.' And then he did. He said when he got finished ·he pulled the phone off, and told her to go out and get the car started. She went out and started the car. He came back in—she came back in, he got in the car and drove off.

Q. Did he ever mention the little boy being present?

A. Yes.

Q. What did he say about that?

A. He said the little boy was standing there with him."

Defendant then directed the police to Mrs. S___'s home, pointing it out as the residence he had entered.

Mr. Noel Robyn, an assistant prosecuting attorney of St. Louis County, active in the first rape trial, testified that defendant, who took the stand in that trial, admitted (in testimony) he had seen Mrs. S___ on the afternoon of May 11, 1971, that she was with a little boy and she "fascinated" appellant. He saw she had "a whole lot of groceries" so he "went up and asked her if [he] could help her carry the groceries in the house." Defendant admitted having sexual intercourse with Mrs. S___ but insisted it was by consent, though in the presence of Mrs. S___'s infant son, stating further that he "borrowed" her car when he left.

The only defense witness called in this retrial of the rape charge was Mr. Brent Williams of the public defender's office who represented defendant in the original trial of May 1971. Testifying from his recollection of that case, Mr. Williams conceded defendant had testified he was walking along the street on May 11, 1971, that he had a conversation with a woman, that he and the woman entered her house and thereafter had intercourse. Williams further testified that defendant admitted the presence of the little boy in the house. He also confirmed the matter of carrying the

groceries in the house and remembered some conversation between Booker and Mrs. S___ about doing a favor "or something like this, to that effect," and that the sexual intercourse was "the favor that she did for him."

Following defendant's 1971 rape conviction, he was tried and acquitted in November of 1972 on charges of burglary first degree and robbery first degree with a dangerous and deadly weapon, arising from the occurrences of May 11, 1971.

The rape conviction was reversed and remanded by the Missouri Court of Appeals, St. Louis District, on April 11, 1973, because the court reporter's notes were lost or destroyed preventing preparation of a transcript.[2] In May of that year defendant moved to dismiss the rape charge alleging that the primary disputed issue in the 1972 burglary and robbery trial had been Mrs. S___'s identification of defendant as her assailant, barring retrial on the charge of rape under the doctrine of collateral estoppel.

█ Considering defendant's first contention of error, it is well-settled that the fifth amendment's double jeopardy clause includes by judicial interpretation the principle of collateral estoppel. A criminal defendant may not be convicted on the basis of an issue of ultimate fact which has been favorably determined for him in a prior criminal proceeding. *Ashe v. Swensen*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). In *Ashe* the court ruled that where a general verdict was reached in the previous case a court must examine the record, pleadings, evidence, charges and other pertinent matters of the prior proceeding to determine " 'whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' The inquiry 'must be set in a practical frame and viewed with an eye to all of the circumstances of the proceedings.' " *Ashe, supra* 397 U.S. at 444, 90 S.Ct. at 1194. There six

2. *See State v. Booker*, 517 S.W.2d 937, 941 (Mo.App.1975), where this matter is discussed

in an appeal affirming a subsequent sodomy conviction of Willis James Booker.

poker players were robbed by three (or four) masked men and defendant was charged with the robbery of one of the players. In that trial no real challenge was made to the evidence of the fact of robbery and its several elements. Cross-examination was brief and directed primarily to defendant's identification as one of the robbers. After acquittal the same defendant was charged with the robbery of a second player and retried on essentially the same evidence except for the markedly improved testimony of identification witnesses. The Supreme Court held that identification was the issue on which the first case turned, there being no real challenge to the other elements of the crime, and that the collateral estoppel effectively barred subsequent prosecutions of this defendant arising from the same robbery.

■ However to establish that the present prosecution is barred by the 1972 burglary and robbery acquittal, "the burden is on the appellant to show that the verdict there *necessarily* decided the issues now in litigation." *United States v. Tramunti,* 500 F.2d 1334, 1346[21] (2d Cir. 1974) cert. denied 419 U.S. 1079, 95 S.Ct. 667, 42 L.Ed.2d 673 (1974). In that case the court, referring to *United States v. Cioffi,* 487 F.2d 492, 498 (2d Cir. 1973), stated: "Since it is usually impossible to determine with any precision upon what basis the jury reached a verdict in a criminal case, it is a rare situation in which the collateral estoppel defense will be available to a defendant." *Tramunti, supra* at 1346[22]. In *Tramunti,* as in the case at bar, defendant failed to establish such situation existed. Here a single individual was separately charged with dissimilar crimes each having distinct factual elements not common to the others. That the crimes involved a single victim, time and place is not controlling.

To fully review the factual basis for the issue, we ordered a transcript prepared of the burglary and robbery trial.[3] We have examined the pleadings, cross-examination, closing arguments, jury instructions and all matters of record as mandated by the Supreme Court to determine if identification was the primary issue upon which the jury could rationally have acquitted defendant. In the burglary charge the forcible breaking and entering with felonious intent were elements (unrelated to the rape) vigorously contested in the evidence, argued by counsel and called to the jury's attention by appropriate instructions of the court. From this we conclude a rational jury could have grounded its verdict upon those issues precluding the availability of collateral estoppel stemming from that count.

In the robbery as well as the burglary count the identification issue was contested but much was made of other issues. Elements of robbery first degree with a dangerous and deadly weapon submitted by the instructions, not appearing in the crime of rape, included the felonious taking and stealing $4 in currency and two wedding rings. This totally unrelated element was a subject of real controversy in the case. The prosecutrix testified that only $1 was taken while the information stated and instructions required a finding that $4 was stolen. In robbery the specific intent to steal property is distinct from the specific intent to forcibly rape and ravish. That the property taken must belong to the victim is an element not involved in rape. The jury could have acquitted for disbelief of any of the foregoing and from our review of the entire record, we cannot say the jury *necessarily* grounded its verdict upon a finding that defendant was not the person committing the acts alleged in the information. *See* also *State v. Johnson,* 504 S.W.2d 23, 27[3] (Mo.1973); *State v. Vonderau,* 438 S.W.2d 271, 274[3] (Mo.banc 1969). Defendant's first point is denied.

■ Defendant next contends it was error to admit C__ S__'s testimony concerning events giving rise to the charges bur-

---

3. The State vigorously argued, perhaps with merit, that defendant failed to properly raise the issue of collateral estoppel or establish a reasonable basis for preparation and examination of the robbery-burglary trial transcript, but to fairly decide the issues, the record was procured.

glary and robbery as defendant had been acquitted of those charges. A similar contention was considered in *State v. Cooksey*, 499 S.W.2d 485, 488 (Mo.1973), in which the Missouri Supreme Court held the collateral estoppel doctrine of *Ashe* "does not speak to the question of the admissibility of evidence; it speaks only to the question of double jeopardy." Defendant's point is without merit.

The third point on appeal evolves from the following testimony on *redirect* examination of Nr. Noel Robyn who prosecuted defendant in the burglary and robbery trial:

"Q. Why did you tell Mr. Booker that you wanted to do all in your power to see he was convicted?

A. Because I felt in my mind and in my heart that Booker was guilty."

It is argued this constitutes a statement of the prosecutor's personal opinion often condemned by our courts. *State v. Moore*, 428 S.W.2d 563, 565[4] (Mo.1968). Yet defendant's request for mistrial was denied. The transcript reveals the question and answer was part of an effort to rehabilitate the witness. During the cross-examination of Mr. Robyn, it was developed that he had had a conversation with defendant in the presence of defendant's counsel before the burglary and robbery trial. He was then asked: "Q. Did you tell him at that time that you would do everything you could to get him convicted? A. Right, right; I did."

 "In general, a witness may testify on redirect examination as to his reasons for his statements on cross-examination, or for his prior statements . . . brought out on cross-examination." 98 C.J.S. Witnesses § 421, p. 228; *State v. Williams*, 448 S.W.2d 865, 868–9[6, 7] (Mo.1970); *State v. Griffin*, 497 S.W.2d 133, 135–6[2, 3] (Mo.1973). Further, mistrial was the only relief requested and it has long been recognized that "declaration of a mistrial is a drastic remedy which should be exercised only where the prejudicial effect can be removed no other way . . . This determination rests largely with the trial judge who ob-

served the incident and can best judge the prejudicial effect upon the jury . . ." *State v. Wilborn*, 525 S.W.2d 87, 96[9, 10] (Mo.App.1975); "an appellate court will not interfere unless the record shows an abuse of such discretion . . ." *State v. Connell*, 523 S.W.2d 132, 137[13] (Mo.App.1975).

 In light of the fact that Robyn was a witness and not a prosecutor in the case at bar and because the challenged testimony was part of a legitimate effort to rehabilitate an impeached witness, we cannot say that the trial court abused its discretion refusing a mistrial.

The judgment is affirmed.

WEIER, P. J., and DOWD, J., concur.