STATE of Missouri, Respondent,

v.

Robert L. WHITE, Appellant.

No. WD 51927.

Missouri Court of Appeals,
Western District.

Aug. 13, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 1, 1996.

Application to Transfer Denied
Nov. 19, 1996.

Jonathan L. Laurans, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Fernando Bermudez, Assistant Attorney General, Jefferson City, for respondent.

Before FENNER, C.J., P.J., HANNA and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

Robert L. White appeals from a jury verdict finding him guilty of possessing a controlled substance under § 195.202, RSMo

1994. Mr. White was later sentenced to a term of ten years.

Mr. White raises three points on appeal. First, he argues that the double jeopardy clause bars this action in that the State is collaterally estopped from prosecuting him for possession of a controlled substance because he was previously acquitted on a littering charge arising out of the same conduct. Second, Mr. White contends that the State violated a discovery rule in failing to disclose to the defense that the State was aware that the television show "COPS" had videotaped the incident and that two cameramen from the television show "COPS" witnessed the incident. Third, Mr. White alleges that prejudice resulted from the State's closing argument in which the prosecutor implied to the jury that the videotape of Mr. White's arrest, which the prosecutor knew had been destroyed by the "COPS" show, could have been produced at trial by defendant if it had been exculpatory. For the reasons stated below, we reject all three arguments on the facts of this case, and affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On the night of July 16, 1994, two Kansas City, Missouri police officers observed a group of approximately twelve to fifteen men gathered together near an intersection. Suspecting that one of the men possessed a weapon, the officers drove past the group and requested backup. Shortly thereafter, another patrol car arrived and the two cars approached the group from opposite directions. By this time only two men remained, one of whom was Mr. White. As they approached, the officers observed what appeared to be a drug transaction.

Mr. White and the other man ran when they became aware of the presence of the officers. As he ran, Mr. White dropped a brown paper bag and later a plastic bag. The police chased and subsequently apprehended Mr. White, but they did not apprehend the other man. The officers retrieved the bags and conducted a field test, which they said confirmed their suspicions that the bags contained crack cocaine and that they had interrupted a drug deal.[1]

Riding in the backup patrol car that night was a two-person film crew from the television show, "COPS." The crew videotaped the officers chase and apprehend Mr. White. Mr. White became aware that evening that the events were being videotaped by the "COPS" show. At least one officer apparently viewed the videotape that night, but apparently no one else not connected with "COPS" did so, and the tape remained in the custody of the "COPS" show personnel. The record does not reveal what was contained on the videotape, for shortly after the incident the COPS show determined that it would not air the incident on television. Consequently, and in accordance with its usual procedure, it erased the videotape. It did not keep a copy of the tape or provide one to the police or to anyone else, so far as the record shows, nor was it requested to do so before the tape was erased.

For reasons not revealed in the record, after being taken into custody, Mr. White was issued a citation for littering and was released without any narcotics charges being brought. On October 4, 1994, Mr. White was acquitted of the July 16, 1994, littering charge in the Municipal Court of Kansas City, Missouri. On March 10, 1995, based on the same July 16, 1994, incident, Mr. White was charged by information with second degree drug trafficking under § 195.223, RSMo 1994. An amended information later charged Mr. White as a prior and persistent offender.

In preparation for depositions in the case, the prosecutor first learned of the fact that "COPS" had taped the incident. It is apparent from the record that he made a good faith effort at that point to obtain the videotape, but by then it had already been destroyed. The prosecutor did not mention the tape to defense counsel, either voluntarily or in response to discovery under Rule 25.03.

Trial was held in July, 1995. At the conclusion of the State's case, the court directed a verdict for the defendant on the charge of trafficking, but allowed the case to proceed

1. Later examination revealed that the bags both did contain crack cocaine.

on the charge of possession of a controlled substance. Both parties referred to the existence and loss of the tape in their closing arguments. The jury found defendant guilty of the charge of possession of a controlled substance. Mr. White was sentenced to a term of ten years. He appeals.

## II. *NEITHER DOUBLE JEOPARDY NOR COLLATERAL ESTOPPEL BARRED MR. WHITE'S CONVICTION FOR POSSESSION OF COCAINE*

Mr. White first notes that he was acquitted of the littering charges which had been brought against him previously based on the very actions which formed the basis of the prosecution in this case. He argues that, as a result of that acquittal, the principles of double jeopardy and collateral estoppel bar the instant prosecution.

■ As this is a legal issue, our review of the lower court's denial of Mr. White's double jeopardy claim is *de novo*. *United States v. Okolie*, 3 F.3d 287, 289 (8th Cir.1993). The Fifth Amendment to the United States Constitution states in relevant part: "nor shall any person be subject to the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This provision, known as the double jeopardy clause, applies to the states, as it is incorporated by reference in the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *State v. Burns*, 877 S.W.2d 111, 112 (Mo. banc 1994).

■ Mr. White recognizes that the proper method for addressing a claim that successive prosecutions constitute double jeopardy is determined by application of what is known as the "Blockburger test." That test, also called the "same element" test, was first set forth in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). *Blockburger* held that the double jeopardy inquiry requires a determination whether each offense contains an element not contained in the other. If each of the offenses does not contain different elements then a successive prosecution *is* barred by the double jeopardy clause. *Id.; Burns*, 877 S.W.2d at 112. If each offense does have an element not contained in the other, however, then there is no double jeopardy. *Id.*

The continued validity of the *Blockburger* "same element" test had briefly been put in question by the Court's seeming adoption in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), of the "same conduct" test. That test had provided "if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted," the double jeopardy clause bars a successive prosecution. 495 U.S. at 510, 110 S.Ct. at 2087.

In *United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), however, the Supreme Court rejected the "same conduct" test and reaffirmed that the proper test for double jeopardy is the "same element" test set out in *Blockburger*. Although the issue of collateral estoppel was not directly at issue in *Dixon*, the Supreme Court also reaffirmed in *Dixon* that there is a collateral estoppel aspect to double jeopardy which may bar a subsequent prosecution where the State has *lost* the first prosecution even if the *Blockburger* test is satisfied. As the Court stated:

> The collateral-estoppel effect attributed to the Double Jeopardy Clause, see *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), may bar a later prosecution for a separate offense where the Government has *lost* an earlier prosecution involving the same facts.

509 U.S. at 705, 113 S.Ct. at 2860 (emphasis in original).

■ The rationale for this rule is not solely dependent on principles unique to double jeopardy. Rather it is simply an application of the basic rules of collateral estoppel in a criminal context. In a civil context, collateral estoppel means that once a party has tried an issue of ultimate fact and lost it, the party is collaterally estopped from again litigating that same issue. In a criminal context, it means that once the state has tried the defendant for a criminal act and defendant has been *acquitted*, he cannot later be tried for an offense which contains an ele-

ment necessarily determined in favor of defendant in the prior case. *State v. Rodden*, 728 S.W.2d 212, 220 (Mo. banc 1987). The doctrine of collateral estoppel is embodied in the Fifth Amendment guarantee against double jeopardy. *Ashe*, 397 U.S. at 445, 90 S.Ct. at 1195. However, because it is an affirmative defense, it is defendant's burden to prove that it applies.

This Court's application of collateral estoppel in *State v. Lewis*, 599 S.W.2d 94 (Mo.App. 1980), is instructive. *Lewis* involved the issue whether a subsequent prosecution for burglary was barred by collateral estoppel where defendant was acquitted of possession of burglar's tools in a prior prosecution arising out of the same incident. We said:

> It is the effect of collateral estoppel to bar a subsequent prosecution where *any* element required for conviction was a ground for the acquittal in the prior prosecution— even where the offenses are different. In that determination, a court is exhorted to practicality and to avoid rigid doctrine to assess from the entire proceeding the facts actually adjudicated by the general verdict of acquittal. The ultimate inquiry in such case is "whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe v. Swenson*, supra, 397 U.S. l.c. 443, 444, 90 S.Ct. l.c. 1194.

*Lewis*, 599 S.W.2d at 98 (emphasis in original).

In holding that the subsequent prosecution for burglary and stealing was barred by collateral estoppel, we determined that "a rational jury could have based acquittal in the prosecution for possession of burglars tools *only* on rejection of the evidence that the tools taken from the defendant were used for unlawful entry into the scale house and for the depredations in the interior premis-

es...." *Id.* at 100 (emphasis added). Thus, the court reasoned, collateral estoppel barred the subsequent prosecution because it was based upon the very issue of fact rejected in the prior prosecution. *Id.* In other words, as it was shown that defendant did not possess burglar's tools with an intent to commit burglary, collateral estoppel prohibited a later showing that defendant in fact broke into the house.

■ With these principles in mind, we compare the elements contained in the offenses of littering, possession of a controlled substance, and trafficking in order to determine whether the municipal judge could rationally have acquitted Mr. White of littering "upon an issue other than that which [Mr. White] seeks to foreclose from consideration." *Id.* at 98. The Kansas City Municipal Code's [2] littering ordinance, section 16.36, states:

> No person shall sweep, throw, cast or otherwise place or deposit litter, or direct, suffer or permit any servant, employee, agent or other person under his control to sweep, throw, cast or otherwise place or deposit litter of any kind whatsoever, in or upon any curb, gutter, street, alley, boulevard, highway, right-of-way, viaduct, tunnel, sidewalk, park, parkway, public square, public building, vacant or occupied lot, vacant building, or pond, stream, or pool of water.[3]

Implicit in the littering ordinance, says Mr. White, is that a person must necessarily be in possession or control, directly or indirectly, of an offending substance before he or she can commit the offense of littering. Mr. White goes on to argue that the element of possession or control is similarly found in the trafficking statute under which he was charged, and in the possession statute under which he was actually convicted. The latter statutes read as follows:

---

**2.** Violations of municipal ordinances are civil matters, but the criminal standard of proof beyond a reasonable doubt must be used because of the quasi-criminal aspects of the prosecution. *City of Cape Girardeau v. Jones*, 725 S.W.2d 904, 907 (Mo.App.1987).

**3.** This section was in effect both on the date of the alleged offense and the date on which Mr.

White was acquitted of littering. The Kansas City Code was revised and renumbered effective January 1, 1995, and the definition of littering can now be found at section 62–81. The new Code, however, does not contain a section similar to the prohibition of littering found in section 16.36.

**Section 195.223.3:** A person commits the crime of trafficking drugs in the second degree if, except as authorized by sections 195.005 to 195.425, he possesses or has under his control, purchases or attempts to purchase, or brings into this state more than two grams of a mixture or substance described in subsection 2 of this section which contains cocaine base....

**Section 195.202.1:** Except as authorized by Sections 195.005 to 195.425, it is unlawful for any person to possess or have under his control a controlled substance.

The State correctly argues, and Mr. White concedes, that the trafficking and possession statutes contain elements not found in the littering ordinance, and vice versa. For example, the trafficking and possession statutes both require that a person possess a "controlled substance" whereas the littering ordinance does not. Conversely, the littering ordinance requires that the perpetrator "sweep, throw, cast or place" litter therein and do so in public or certain private places. Neither Section 195.202 nor Section 195.223 so require.

The State says that this is determinative of liability, for this means the *Blockburger* test is met. Defendant argues, however, that in order to acquit him of littering, the court had to find he did not possess the bag of cocaine. Thus, since the second prosecution required a finding of his possession of cocaine, the state is barred from prosecuting him for possession under the "collateral estoppel" aspect of double jeopardy.

We disagree. There is no basis to know which element of littering was found wanting. While we do have a copy of what purports to be the ticket and the judgment of acquittal on the back thereof, this affords no help in determining the collateral estoppel issue, for neither it nor anything else in the record indicates the basis on which the littering charge was determined.[4] There are elements of littering other than possession

which may not have been proved. For instance, the court may not have believed that defendant intended to leave the drug but rather placed it where it would not be found until after the police left; or it may be that the drugs were not placed on property which fell within the prescription of the ordinance; or it may be that the judge did not believe that drugs constitute litter, and so forth. Defendant has thus failed to show that the basis for acquittal was lack of proof of possession, rather than lack of proof of some other element of littering.

For this reason, the mere fact that defendant was acquitted of the littering charge does not bar his later prosecution on drug charges. *See State v. Booker,* 540 S.W.2d 90, 93 (Mo.App.1976) (collateral estoppel defense is rarely available to a defendant as it is difficult to determine upon what basis the jury reached a verdict in a criminal case). We thus find that Defendant has failed to meet his burden of showing collateral estoppel. *See Booker, supra. Cf. State v. Coleman,* 773 S.W.2d 199, 201 (Mo.App.1989).

## III. DISCLOSURE OF THE EXISTENCE OF THE VIDEOTAPE

■ In his second point, Mr. White contends that the State violated its obligation to disclose any photographic or electronic surveillance evidence relating to the offense allegedly committed by Mr. White by failing to disclose that a videotape was made of Mr. White's arrest by "COPS" and that two "COPS" cameramen may have witnessed the incident. On the basis of the alleged violation, Mr. White argues, the trial court erred in overruling his Motion for New Trial.

■ Defendant first contends that the State violated Rule 25.03(A)(8) in failing to disclose the existence of the videotape in response to defendant's request that the state disclose all photographic or electronic

---

4. The State raises a question about the sufficiency of this filing, but we assume that adequate evidence of the acquittal was included in the Legal File. If the prior proceeding had been on

the record, a review of the transcript or other record might reveal the basis for the acquittal. However, no record is normally made of munici-

surveillance.[5] That rule states in relevant part that:

> If there has been any photographic or electronic surveillance (including wiretapping), relating to the offense with which the defendant is charged, [or] of the defendant ...; this disclosure shall be in the form of a written statement by counsel for the state briefly setting forth the facts pertaining to the time, place, and persons making the same;

We are not convinced that a violation of this rule occurred.

At the time he first answered defendant's discovery request for information about electronic surveillance, the prosecutor apparently was not aware of the "COPS" tape. The prosecutor did learn of the tape prior to trial, however, yet did not supplement the State's response to discovery because he was, in good faith and despite reasonable effort, unable to locate the videotape, or a copy of it, after contacting the police and the "COPS" television show. The prosecutor likewise made no attempt, outside of formal discovery, to disclose to the defense that a videotape was made of Mr. White's alleged misconduct and that two cameramen may have witnessed the events of July 16, 1994.

Defendant says that in failing to reveal the fact that a videotape had once been made, the State violated Rule 25.03(A)(8). We do not believe that, as a technical matter, it did violate the discovery rule in question. If read in isolation, Rule 25.03(A)(8) does say the State must, upon request, disclose whether "there has been any photographic or electronic surveillance (including wiretapping) relating to the offense with which the defense is charged...." However, this provision is a

subpart of Section (A) of Rule 25.03, which says "the state shall, upon written request of defendant's counsel, disclose to the defendant's counsel such part or all of the following material and information within its possession or control designated in said request: ...". Thus, only photographic or electronic surveillance *within the possession or control of the State* need be disclosed.

This interpretation of Rule 25.03(A)(8) is supported by the language of Rule 25.03(C), which states that:

> If the defense in its request designates *material or information* which would be discoverable under this Rule if in the possession or control of the state, but which is, in fact, in the possession or control of *other governmental personnel,* the state shall use diligence and make good faith efforts to cause such materials to be made available to the defense counsel, and if the state's efforts are unsuccessful *and such material or other governmental personnel are subject to the jurisdiction of the court,* the court, upon request, shall issue suitable subpoenas or orders to cause such material or information to be made available to the state for disclosure to the defense.

(emphasis added). Subsection C thus provides a means for the defense to try to obtain information or materials which is not in the possession or control of the State, but of which the State is aware. However, the means provided extends only to information or material in the possession or control of other government personnel and which is subject to the jurisdiction of the court. Here, the tape, when it existed, was in the possession or control of the "COPS" show, not government personnel, and the "COPS"

---

pal court littering prosecutions, and certainly no such record was filed in this Court.

**5.** Unless and until defendant makes a request for discoverable information or material, the State cannot be in violation of Rule 25.03 for failing to produce it. *State v. Flemming,* 855 S.W.2d 517, 519 (Mo.App.1993). Defense counsel neglected to include a copy of his discovery requests in the record on appeal. However, the record does contain the State's answer to defense request for production number 8. Although the request is not repeated in the State's response, the response itself makes it evident that the defendant must

have asked for disclosure of photographic or electronic surveillance as permitted in Rule 25.03(A)(8), for the response stated: "No photographic or electronic surveillance was conducted relating to this offense." From this we can infer that a corresponding discovery request was made by the defense. However, the record does not show that the defense requested the State to identify any eyewitnesses, including the names of the "COPS" film crew. Accordingly, we do not address what would have been the effect of a failure to reveal these names in response to a proper request for them.

personnel had left the state long before Mr. White was ever arrested and even longer before the prosecutor ever learned of the existence of the videotape. Rule 25.03 thus does not come into play.

By this ruling, we do not mean to suggest that we agree with the prosecutor's decision not to reveal the existence of the videotape to the defense. It may be in another situation that the defendant could utilize such information to obtain witnesses or evidence which would benefit defendant. The prosecutor should not have taken it upon himself to decide whether such material might have been available from other government personnel or might have been subject to subpoena. Here, however, it is clear from the record that the evidence was in fact destroyed, and was not in governmental possession or in the court's jurisdiction. For this reason, and the other reasons stated below, we believe that defendant was not entitled to a mistrial or to an acquittal.

 Even had Rule 25.03 been violated, however, we do not think that it would require grant of a new trial or an acquittal. The determination whether the State violated a rule of discovery rests within the sound discretion of the trial court. We review its ruling only for abuse of discretion. *State v. Engel*, 859 S.W.2d 822, 829 (Mo.App.1993). Should a violation occur, the trial court also has discretion in selecting an appropriate remedy. *State v. Metts*, 829 S.W.2d 585, 588 (Mo.App.1992). In choosing a remedy, it "may order disclosure of material and information, grant a continuance, exclude evidence or enter such orders it deems just given the situation." *State v. Massey*, 867 S.W.2d 266, 268 (Mo.App.1993); Rule 25.16.

Here, Mr. White suggests that justice requires that we remand either for entry of an acquittal or for a new trial. We do not agree. When defense counsel first learned of the non-disclosure at trial, he did not request an acquittal. He did not even ask for a continuance or indeed for any other relief based on the non-disclosure. Rather, he simply brought the matter to the court's

attention during a recess and asked the court to inquire into the circumstances why the videotape was not disclosed. The court did so. After learning the facts about the videotape and its destruction, defendant still did not request any relief, and the court did not offer any. It simply said that it would consider the matter more fully later.

In the remainder of the trial both the prosecution and the defense brought out information about the presence of the "COPS" camera crew and the videotape in their examination of witnesses. At the close of the State's case, defendant moved for acquittal based on the alleged violation of the prosecution's duty to disclose exculpatory information. Alternatively, he asked that a new trial be granted *if* his client were convicted. The motions were denied.

In closing argument, defense counsel then argued that the tape did not portray the same events that the officers testified to, and that, if it did, the officers would have requested a copy of the tape so that additional evidence could be presented to a jury in the event of a trial. The State argued that the tape showed Mr. White to be guilty and that the State would have played it for the jury had it not been beyond the State's control and destroyed.[6] After the jury brought back a verdict of guilty, defense counsel formally requested a mistrial or an acquittal in his Motion for New Trial.

A mistrial is a "drastic remedy" that is to be "employed sparingly." *State v. Wren*, 643 S.W.2d 800, 802 (Mo.1983). We find the trial court had no obligation to grant a mistrial here.

 First, the record shows that the defendant was aware that a television crew had videotaped the incident at the time of the taping. He simply neglected to pass on this information to his counsel until midway through the trial. There is substantial authority that the prosecutor cannot be cited for a discovery violation where the defendant had knowledge of the existence of the item that the State failed to disclose. *Accord*

---

**6.** The defense objected to this argument on grounds discussed in the final section of this opinion.

*Hughes v. Hopper*, 629 F.2d 1036 (5th Cir. 1980), *cert. denied*, 450 U.S. 933, 101 S.Ct. 1396, 67 L.Ed.2d 367 (1981); *see State v. Sykes*, 628 S.W.2d 653, 656–57 (Mo.1982). This follows from the fact that the principle on which the State's disclosure obligation is based is the policy of allowing the defendant a "decent opportunity to prepare in advance for trial and to avoid surprise." *State v. Shepherd*, 903 S.W.2d 230, 232 (Mo.App. 1995). Where the defendant is already aware of the evidence, there is no such surprise.

Second, we think that this rule is particularly applicable on the facts of this case, where the loss of the information was the result of the independent actions of third parties for whom the State was not responsible, and where that loss of information occurred long before any obligation to disclose could have arisen. In the case of such innocent non-disclosure, it would not be appropriate to penalize the State by requiring grant of a new trial or entry of acquittal. *Cf. United States v. Augenblick*, 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969). *See generally*, Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure*, § 19.5, at 548–52 (1984); Timothy M. Hall, Annotation, *Books, Papers, and Documents Subject to Discovery Rule By Defendant Under Rule 16 of Federal Rules of Criminal Procedure*, 108 ALR Fed. 380 (1992).

Finally, there is no basis to believe that the videotape would have been exculpatory. As noted, defendant knew of the taping yet did not even mention it to his counsel. Once counsel learned of it, he did not seek a continuance to obtain testimony about the content of the tape, nor did he seek to interview the camera crew. He did not request any instruction from the court that the jury be told it could infer the tape was beneficial to the defense based on the State's failure to produce it. Instead, he affirmatively used the loss of the tape to his benefit during cross-examination and closing argument.

In support of his Motion for New Trial, he did not offer any evidence as to the nature of the material on the videotape, nor did he offer any evidence of witnesses who had seen the tape in support of his Motion for New Trial. Indeed, even on appeal Mr. White does not maintain that the tape was exculpatory, just that it might have been. Defense counsel's trial strategy toward use of the tape and its destruction was reasonable in light of the innocent nature of its destruction. Given this strategy, and in light of all of the other circumstances, no fundamental unfairness or deprivation of due process occurred as a result of the failure to disclose the tape to the defense.[7] *Cf. Sykes, supra.*

## IV. *CLOSING ARGUMENT AS TO VIDEOTAPE*

Mr. White claims in point III that prejudice resulted from the prosecutor's closing argument in which he implied to the jury that the defense could have and would have produced the videotape at trial, even though the State knew it was unavailable, if it had been exculpatory. Hence, says Mr. White, the trial court erred in denying his Motion for New Trial.

Where defense counsel objects to allegedly improper closing argument, appellate courts will reverse the trial court's ruling only upon a showing of abuse of discretion by the trial court. *State v. Shurn*, 866 S.W.2d 447, 460 (Mo. banc 1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994). An abuse of discretion will be found only where the argument was plainly unwarranted or if the complained of comments

---

7. A defendant's due process rights are violated when requested evidence favorable to the defense is suppressed where such evidence is material either to "guilt or punishment." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Scroggins v. State*, 859 S.W.2d 704, 707 (Mo.App.1993), *quoting, United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). Even when a discovery rule is violated, the mere failure to disclose does not in and of itself entitle appellant to a new trial unless it is shown that fundamental unfairness resulted. *State v. Rhodes*, 591 S.W.2d 174, 177 (Mo.App.1979). For the reasons noted above, no such fundamental unfairness occurred here.

decisively affected the jury's determination. *State v. Bailey,* 839 S.W.2d 657, 661 (Mo. App.1992). To have a decisive impact "there must be a reasonable probability that, in the absence of [the challenged] comments, the verdict would have been different." *State v. Roberts,* 838 S.W.2d 126, 132 (Mo.App.1992).

The State's closing argument concluded with the following exchange between the prosecutor, defense counsel and the court:

> PROSECUTOR: The COPS tape. The tape showed that he was guilty. We would have brought it here to you but it's been destroyed. If the tape showed he was innocent, we wouldn't be here today.... And we don't control the COPS TV program and we can't tell them what to do. But they destroy the tapes that are not aired. This was not aired on TV.
>
> DEFENSE COUNSEL: Objection, Judge. There is no testimony before this jury that that tape was destroyed.
>
> THE COURT: The objection will be sustained.
>
> DEFENSE COUNSEL: Ask the jury to disregard that comment.
>
> THE COURT: The jury will disregard.
>
> PROSECUTOR: The fact of the matter, if the tape existed it would have been here from one side or the other, either side, which would—

At the bench conference that immediately followed this exchange, the trial court again sustained a defense objection to the State's argument implying that the defense would have produced the tape if it had been exculpatory. We find the objected to comments by the prosecutor, although improper, were not so prejudicial as to require a mistrial.[8] First, we do not agree that by these remarks the prosecutor was trying to imply that defendant would have produced the tape if it had been exculpatory. To the contrary, the prosecutor admitted the tape had been destroyed. Rather, he was simply trying to argue that one could infer the tape's destruction from the fact that no one had produced

it, as it surely would have been produced by one side or the other if it had still existed.

Second, Defendant also referred to the "COPS" tape in his argument to the jury, stating:

> Do you think for a minute, folks, that if they had a tape of this man committing what they said he did and what they said happened, ... that they would not have the tape here? ... You want to believe they couldn't get a copy of that? ... There is a tape out there, folks, that you will never see.... They didn't want you to see it and you've got to ask yourself why.... But I submit to you, from the stories they told us, that I don't think that tape is going to show what they say it showed.

Thus, defendant made his point that it was the State, not defendant, who would have had access to the tape. When the State started to argue to the contrary, the defendant's objection was sustained and the court ordered the jury to disregard the comments.

A similar fact situation occurred in *State v. Bohlen,* 670 S.W.2d 119 (Mo.App.1984). In that case, a videotape depicting the alleged illegal actions of the defendant during a robbery was viewed by the store manager, but it was not offered into evidence at trial. When the State failed to produce the videotape after its existence was established, the defendant was entitled to imply to the jury during closing argument that the contents of the film were unfavorable to the State's case. *Id.* at 122–23.

During its closing argument the State attempted to diffuse the inference by commenting that the videotape "didn't show a darn thing" and that "[t]here is no film." *Id.* at 122. The latter comment was made after the court had already sustained an objection by the defense. *Id.* As there was no evidence that the film did not exist, the prosecutor's comments about its destruction were improper. The court held, however, that the error was not prejudicial because the court's admonition to the jury to disregard the prosecu-

---

8. The prosecutor's comment that "the tape showed he was guilty" was clearly outside the evidence. No objection was raised below or in this Court to this comment, however. We thus do not address it here.

tor's comment cured any prejudice. *Id.* at 123, *citing, Wren, supra.*

Mr. White admits that *Bohlen* is virtually indistinguishable from the instant case. Yet, he requests that we conclude differently as to the prejudicial effect of the prosecutor's comments. There is nothing in the record that would support such a conclusion. As in *Bohlen,* Mr. White here received all the relief to which he was entitled. *See also Wren, supra,* at 802. No reversible error is shown.

For the reasons stated above, we affirm.

All concur.