**STATE of Missouri, Appellant,**

v.

**Terry Lynn SIMMONS, Respondent.**

No. 27089.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 22, 2006.

Michael L. Ash, Stockton, for appellant.

Alex Reiter, Nevada, for respondent.

ROBERT S. BARNEY, Judge.

The State of Missouri ("Appellant") files an interlocutory appeal, pursuant to sec-

tion 547.200.1(3), RSMo 2000,[1] resulting from the trial court's grant of a motion to suppress the results of a blood test submitted by Terry Lynn Simmons ("Respondent") in the course of Respondent's arrest and subsequent charge for driving with excessive blood alcohol content, a violation of section 577.012.[2] Appellant raises one point of trial court error, discussed below. We reverse and remand.

The record reveals that on January 1, 2004, Respondent's vehicle was pulled over by Missouri State Highway Patrol Trooper Rob Savage ("Trooper Savage") for driving with "no light illuminating the rear plate." See § 307.075, RSMo 2000. While talking to Respondent, Trooper Savage "noticed an alcoholic beverage odor coming from the vehicle" and he noticed Respondent's "eyes were watery and bloodshot." Respondent admitted to Trooper Savage that he had "two beers" that evening. Trooper Savage requested that Respondent perform a series of field sobriety tests. On the horizontal gaze nystagmus test, Respondent "showed all six signs of nystagmus" and on the one leg stand test Respondent "put his foot down three times...."[3] Trooper Savage then gave Respondent a portable breath test which measured Respondent's blood alcohol concentration at 0.95 percent by weight. Trooper Savage then informed Respondent of his Miranda[4] rights and placed Respondent under arrest for Driving While Intox-

1.  Section 547.200, RSMo 2000 sets out, in pertinent part:

    1.  An appeal may be taken by the state through the prosecuting or circuit attorney from any order or judgment the substantive effect of which results in:

    * * *

    (3) Suppressing evidence; or

    * * *

    3.  The appeal provided in subsection 1 of this section shall be an interlocutory appeal, filed in the appropriate district of the Missouri court of appeals, unless the proceedings involve a charge of capital murder or murder in the first degree, pursuant to the provisions of section 565.001 or 565.003, RSMo, in which case notices of appeal shall be filed in the supreme court of Missouri.

    Unless otherwise stated, all statutory references are to RSMo Cum.Supp.2005.

2.  Section 577.012 states:

    1.  A person commits the crime of "driving with excessive blood alcohol content" if such person operates a motor vehicle in this state with eight-hundredths of one percent or more by weight of alcohol in such person's blood.

    2.  As used in this section, percent by weight of alcohol in the blood shall be based upon grams of alcohol per one hundred milliliters of blood or two hundred ten liters of breath and may be shown by chem-

ical analysis of the person's blood, breath, saliva or urine. For the purposes of determining the alcoholic content of a person's blood under this section, the test shall be conducted in accordance with the provisions of sections 577.020 to 577.041.

    3.  For the first offense, driving with excessive blood alcohol content is a class B misdemeanor.

    We note that this is the second such interlocutory appeal resulting from Respondent's alcohol-related arrest which took place on the evening of January 2, 2004. As explained below, Respondent was first charged with driving while intoxicated, proscribed by section 577.010. Subsequent to a hearing on Respondent's motion to suppress the results of a blood test taken pursuant to section 577.020, the trial court sustained Respondent's motion to suppress the test results and Appellant dismissed the charges against Respondent. Appellant then charged Respondent with operating a vehicle with excessive blood alcohol content, a violation of section 577.012, the charge which underlies this appeal.

3.  Trooper Savage did not have Respondent perform the walk-and-turn test, because Respondent explained he suffered from gout in the left foot.

4.  Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

icated ("DWI"), a violation of section 577.010.

When Trooper Savage arrived at the El Dorado Springs Police Department with Respondent, he read to Respondent the implied consent form and Respondent agreed to take a breathalyzer test. *See* § 577.020.[5] Trooper Savage prepared the Datamaster machine and instructed Respondent to blow into it; however, "[a]fter a real short period of time [Trooper Savage] noticed up on the monitor [of the Datamaster] it said pump error and the machine didn't seem to be operating properly" even though Respondent was blowing into it as instructed. Trooper Savage told Respondent to stop blowing in the machine and he turned the machine off to reset it. When the machine re-started, Trooper Savage had Respondent try to blow into it again. According to Trooper Savage, "as soon as [Respondent] started blowing just instantly it came up and said pump error again, so I went ahead and stopped him again." Trooper Savage informed Respondent that "the machine was not working . . ." and that it would be easier to go to the hospital and take a blood sample than to go to another police station to take a breathalyzer test.

Trooper Savage then transported Respondent to Cedar County Memorial Hospital for a blood test. At the hospital, Trooper Savage again "asked [Respondent] if he understood his rights concerning supplying a sample of his blood." Respondent stated that he understood his rights and would supply a sample. After the nurse drew Respondent's blood, Trooper Savage transported him back to the police station. Respondent was then charged with DWI.

Prior to trial on Respondent's DWI charge, Respondent filed a motion to suppress the results of the blood test. In his motion, he argued he submitted to three tests (the two attempts on the Datamaster and the one blood test) thereby satisfying the provisions of section 577.020.2, which specifically sets out that "the implied consent to submit to the chemical tests listed in subsection 1 of this section shall be limited to not more than two such tests arising from the same arrest, incident or charge." Accordingly, Respondent maintained the third test administered to him, the blood test, constituted an unreasonable search and seizure which violated his constitutional rights. The trial court sustained Respondent's motion to suppress the results from the third test and Appellant appealed that ruling.

This Court subsequently dismissed Appellant's interlocutory appeal for failure "to take further steps to secure appellate review within the periods of time allowed." Appellant dismissed the then pending charge against Respondent.

On December 14, 2004, Appellant filed another information against Respondent, this time charging him with the Class B

**5.** Section 577.020 sets out, in pertinent part:
1. Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent to, subject to the provisions of sections 577.020 to 577.041, a chemical test or tests of the person's breath, blood, saliva or urine for the purpose of determining the alcohol or drug content of the person's blood pursuant to the following circumstances:
(1) If the person is arrested for any offense arising out of acts which the arresting officer had reasonable grounds to believe were committed while the person was driving a motor vehicle while in an intoxicated or drugged condition;
* * *
2. The implied consent to submit to the chemical tests listed in subsection 1 of this section shall be limited to not more than two such tests arising from the same arrest, incident or charge.

misdemeanor of driving a motor vehicle with excessive blood alcohol content. *See* § 577.012. Respondent again filed a motion to suppress the results of the blood test and a hearing was held on June 24, 2005. Following the hearing, the trial court made the following docket entry:

Court having been duly informed by counsel that a previous case [the DWI case] was filed by [Appellant] against [Respondent]. In that case the judge had granted a motion to suppress the '3rd test' (a blood test) of the [Respondent]. Apparently [Respondent] had been stopped and informed of the implied consent law. [Respondent] was asked to take a breath test. [Respondent] complied with that request and the date master [sic] breath machine recorded a 'pump error.' The officer turned the machine off and turned the machine back on, waited 15 minutes and [Respondent] was required to take the test again and [Respondent] blows again like he is supposed to. The machine malfunctioned again 'pump error.' [Respondent] was requested to do a blood test and one was taken. The court in [the DWI case] suppressed the evidence as to the '3rd test' the blood test. [Appellant] attempted to take an appeal but the appeal ... was dismissed. [Appellant] then dismisses the DWI case ... [Appellant] then files a case against the same [Respondent] for excessive BAC on December 14, 2004, ... which is this case. The same issue as to the '3rd test' is the issue before this court. It would

appear that collateral estoppel would prevent this court from ruling differently on the admissibility of the '3rd test' the blood test and this court will follow the ruling of the court on that issue and will suppress the evidence as to the '3rd test' the blood test since the previous court ruled that the 2 tests attempted on the malfunctioning breath machine were the 2 tests allowed under the implied consent law.[6]

This appeal followed.

In its sole point on appeal, Appellant maintains the trial court abused its discretion in sustaining Respondent's motion to suppress the results of the blood test. Specifically, Appellant maintains that the language of section 577.020.2 "contemplates the submission to two separate [types of] chemical test[s] arising out of the same arrest ..." and does not limit the testing to two *actual* tests.

"A trial court's ruling on a motion to suppress may be reversed only if it is clearly erroneous." *State v. Shaon*, 145 S.W.3d 499, 504 (Mo.App.2004). "Appellate review is limited to a determination of whether the trial court's ruling is supported by sufficient evidence from the record as a whole." *Id.* In our review, "this [C]ourt considers all facts and reasonable inferences in the light most favorable to the challenged order." *Id.* "This [C]ourt may not substitute its discretion for that of the trial court when reviewing an order suppressing evidence." *Id.*

---

**6.** In its appeal, Appellant does not raise the issue of the trial court's reliance upon the doctrine of collateral estoppel in sustaining Respondent's motion to suppress; however, the doctrine has no application to the instant matter because Respondent has not previously been tried and acquitted for this same offense. It has long been held that "[c]ollateral estoppel ... does not even begin to come into play unless the defendant has been ac-

quitted in the first trial." *State v. Moton*, 476 S.W.2d 785, 790 (Mo.1972). "In a criminal context, [collateral estoppel] means that once the state has tried the defendant for a criminal act and defendant has been *acquitted*, he cannot later be tried for an offense which contains an element necessarily determined in favor of defendant in the prior case." *State v. White*, 931 S.W.2d 825, 828–29 (Mo.App. 1996).

Under the Implied Consent Law, section 577.020, Respondent was required to submit "to not more than two ... tests [of his breath, blood, saliva or urine] arising from the same arrest, incident or charge." § 577.020.2

In our analysis we are guided by the precepts and principles found in *Smock v. Dir. of Revenue*, 128 S.W.3d 643 (Mo.App. 2004); *Baldridge v. Dir. of Revenue*, 82 S.W.3d 212 (Mo.App.2002); and *Snow v. Dir. of Revenue*, 935 S.W.2d 383 (Mo.App. 1996). In *Smock*, driver consented to a chemical breath test but either was unable or unwilling to provide a breath sample sufficient to register as a "valid" test on the machine, despite the fact that the machine "display[ed] a blood alcohol content ... reading of .137 percent." *Smock*, 128 S.W.3d at 645. A subsequent attempt by driver proved futile, because driver was either unable or unwilling to submit a breath sample sufficient to register as a valid test. *Id.* Driver was then requested to submit to a blood test which she refused. *Id.* The Director revoked driver's driving privileges pursuant to section 577.040.2 for refusing to submit to a chemical test for intoxication. *Id.* Driver filed a petition for judicial review pursuant to section 577.041.4 and the trial court reinstated her driving privileges. *Id.* On appeal, this Court reversed the trial court's decision based on its misapplication of the law and remanded the matter for further action. *Smock*, 128 S.W.3d at 648.

In this Court's opinion in *Smock* we observed that "the fact that [the implied consent law] allows an officer to request more than one chemical test of a suspected intoxicated driver is beyond serious dispute." *Id.* % hat 647. We also observed that "[i]n no Missouri case, and certainly not in the language of [s]ection 577.020.2, is there to be found a caveat supporting a trial court's determination that an officer who requests a *second statutorily allowed test* following an initial 'valid' test does so outside the bounds of the implied consent statute." *Id.* (Emphasis added). This Court also set out that section 577.020 "clearly allows for two chemical tests of a driver." *Id.* at 648. We also stated that "[t]he legislature has chosen, for whatever reason, not to include in the implied consent provision any qualification based upon whether a driver submits to and is successful in completing an initial test, only to refuse a request for a second test." *Id.*

Likewise, in *Baldridge*, driver attempted three times to blow into the breath machine. *Baldridge*, 82 S.W.3d at 216–17. On the third try, while the machine's "blow light was flashing periodically," the machine "recorded a blood alcohol content of .015 [percent]." *Id.* at 216. The testing officer, however, did not believe the accuracy of the test because he thought driver was intentionally letting air escape and there was evidence of recent marijuana use on the part of driver. *Id.* at 216–17. Driver was then requested to take a urine test, which he refused. *Id.* The Western District of this Court determined that the testing officer was "permitted to request," as the Court termed it, "a second test," and that the "Director's evidence established that [driver] refused to submit to a chemical test." *Id.* at 221.

Lastly, in *Snow*, the driver agreed to take a breath test and then attempted three times to blow into the breath analysis machine while complaining she could not perform the test because of her asthma. *Snow*, 935 S.W.2d at 385. After the machine failed to make a printout on the third attempt, driver was requested to submit to a blood test which she ultimately refused when she arrived at the hospital for the blood test. *Id.* at 384. Her driving privileges were revoked. *Id.* She then filed a petition for review and the trial

court ordered the revocation for refusal to submit to a chemical test be stricken from her record. *Id.* On appeal to this Court we noted that "[s]ection 577.020.1 provides that 'any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent to a chemical test *or tests* of his breath, blood, saliva or urine for the purposes of determining the alcohol content of his blood.'" *Id.* at 385 (quoting § 577.020.1). Furthermore, we observed that "[a] person who comes within the provisions of [section] 577.020 does not have a choice of which chemical test he will take." *Id.* We also determined that "[s]ection 577.020 allows an officer to request more than one of the statutory tests" and in view of driver's refusal to submit to a blood test after "she either did not or could not properly perform the breathalyzer test," her driving privileges had been improperly reinstated. *Id.* at 386.

As in *Smock, Baldridge, and Snow,* Respondent in the present matter was called upon to submit to more than one chemical test of his blood. Based on the principles established by the foregoing cases, the officer conducting the test had the right to request such "a second statutorily allowed test ..." following Appellant's two, prior incomplete breath tests. *Smock,* 128 S.W.3d at 647. Accordingly, Respondent was required under the Implied Consent Law, section 577.020, to submit to the statutorily permitted chemical test of his blood.[7] *Snow,* 935 S.W.2d at 385–86.

The trial court's judgment and order suppressing the results of Respondent's blood test is clearly erroneous. *Shaon,* 145 S.W.3d at 505. It is reversed and the matter is remanded for further proceedings consistent with this opinion.

SHRUM, P.J., and BATES, C.J., concur.

---

7. *See State v. Smith,* 134 S.W.3d 35, 39 (Mo. App.2003) (holding that the Implied Consent Law "allows law enforcement officers to obtain blood in circumstances in which a warrant or actual consent may otherwise be required").