**STATE of Missouri, Plaintiff/Appellant,**

v.

**Harold DYKES, Defendant/Respondent.**

**No. ED 89881.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 13, 2007.

Rebeca Navarro–McKelvey, Assistant Circuit Attorney, St. Louis, MO, for Appellant.

Brocca Smith, St. Louis, MO, for Respondent.

*Opinion*

MARY K. HOFF, Presiding Judge.

The State of Missouri files this interlocutory appeal, pursuant to Section

547.200.3, RSMo 2000,[1] resulting from the trial court's order suppressing statements that Harold Dykes (Defendant) made to police following his arrest for felony stealing. The State argues the trial court erred in suppressing Defendant's incriminating statements regarding an unrelated case because (1) the Assistant Circuit Attorney, who was a witness to the incriminating statements, and her mere presence at the suppression hearing, did not render the statements inadmissible, and (2) Defendant had no Sixth Amendment right to counsel during the police interview concerning a case in which Defendant was neither charged nor was a suspect. We affirm.

### Facts and Procedural Background

Defendant was charged with a class C felony of stealing over $500 dollars by deceit, Section 570.030 RSMo. Cum.Supp. 2006. On June 15, 2006, the trial court authorized Detective Thomas Neske (Detective Neske) of the St. Louis Metropolitan Police Department to interview Defendant on matters "not related to the charges pending against the defendant."[2] On June 23, 2006, Detective Neske together with the Assistant Circuit Attorney, who was not authorized to speak with Defendant, met Defendant at the Saint Louis Justice Center. On June 12, 2007, Defendant filed a motion to suppress identification, evidence, and oral statements including those resulting from this interview. On June 19, 2007, the trial court held a hearing on Defendant's motion.

At the suppression hearing, Detective Neske testified that his intent in interviewing Defendant was to see if he would be able to identify unknown suspects and otherwise gain information about other similar crimes to the one with which Defendant was charged. Detective Neske stated he wanted to gain information about how cons work and how victims were chosen. He testified he thought Defendant would have this information because the crimes he was investigating were "strikingly similar" to the one in which Defendant is charged. Detective Neske also stated that the information Defendant conveyed "made an impression" on him regarding the case pending against Defendant because of the details involved in the case at bar.

Detective Neske stated he had not notified any attorney of the meeting on June 23, 2006, and had no independent knowledge of any notice. He testified Defendant refused to sign anything and would not make an audio-taped statement but waived all of his Miranda rights.[3]

During the interview, Defendant alluded to his own superiority as a con artist and implicated others involved in scams. Defendant also indicated he had a partner who operated with him in scams and provided details regarding her gambling problem and poor character. Detective Neske attributed this "partner" to Defendant's pending case even though Defendant never specifically stated there was any connection between the two. As the State's brief indicated,

> During the course of the interview, [Defendant] made several incriminating statements.... It is these admissions which the State seeks to admit in [Defendant's] trial. These statements, re-

1. Unless otherwise indicated, all further statutory references are to RSMo 2000.

2. Prior to the interview, Defendant was represented by counsel and had been formally indicted on the pending felony stealing charge.

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

garding [Defendant's] past uncharged crimes, indicate a criminal scheme so unique, as to establish the likelihood that [Defendant] committed the crime for which he is being tried. The statements are also evidence of [Defendant's] intent, identity and lack of mistake in connection with the charged crime.

Following the hearing, the trial court sustained Defendant's motion based on Defendant's written motion to suppress and oral argument. This interlocutory appeal follows.

## Standard of Review

A trial court's ruling on a motion to suppress may be reversed only if it is clearly erroneous. *State v. Simmons*, 186 S.W.3d 418, 421 (Mo.App. S.D.2006). Our review is limited to a determination of whether the trial court's ruling is supported by sufficient evidence from the record as a whole. *Id.* In reviewing a trial court's order on a motion to suppress, we consider all facts and reasonable inferences in the light most favorable to the challenged order. *Id.* We defer to the trial court's determination as to the credibility of witnesses. *Id.*

## Discussion

The State raises two points on appeal which are interrelated and which we address together. In its appeal, the State argues the trial court erred in suppressing Defendant's incriminating statements because the Assistant Circuit Attorney's mere presence at the suppression hearing did not render the statements inadmissible and Defendant had no Sixth Amendment right to counsel during the police interview. We disagree.

At the suppression hearing, while the trial judge noted the Assistant Circuit Attorney had inappropriately interjected herself as a witness in this case, this was not the sole basis of his ruling on the motion to suppress. The trial judge further stated: "He's—he has an attorney; it's certainly not clear—and now we want to use these statements as an admission of some sort. I'm not going to allow it. These statements—motion to suppress is sustained. It will not be allowed."

The State cites to *State v. Walton*, 899 S.W.2d 915, 919 (Mo.App. W.D.1995), to argue that it is not improper for a prosecutor to be a witness in a criminal matter which he or she is prosecuting. We find *Walton* factually distinguishable from the case at bar. In *Walton*, the prosecutor was the sole witness to statements made by a witness who lied at trial. *Walton*, 899 S.W.2d at 919. The court held it was necessary for the prosecutor to testify as a rebuttal witness. *Id.* Here, unlike the prosecutor in *Walton*, the Assistant Circuit Attorney was present while statements were obtained in violation of Defendant's Sixth Amendment rights.

The Sixth Amendment right to counsel attaches only at or after the time adversary judicial proceedings have been initiated against an accused by way of a formal charge, preliminary hearing, indictment, information, or arraignment. *Michigan v. Jackson*, 475 U.S. 625, 629–30, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). "[I]f police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." *Id.* at 636, 106 S.Ct. 1404. The Sixth Amendment right to counsel attaches to any interrogation which focuses on eliciting information about the crime for which the defendant has been indicted or formally charged or related crimes which are "inextricably intertwined" with the

charged crime.[4] *Texas v. Cobb,* 532 U.S. 162, 173, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001).

The State relies on *Cobb* to argue "[t]he 6th Amendment right to counsel does not attach to uncharged crimes that are factually related to the charged offense." The State misreads the holding in *Cobb.* In *Cobb,* the defendant had been charged and indicted with burglary and was interrogated by police regarding a murder that may have taken place at the same time as the burglary. *Id.* at 165–66, 121 S.Ct. 1335. The defendant admitted he committed the murder, but the court suppressed his statement at his murder trial reasoning that the defendant's right to counsel had attached with the indictment on his burglary. *Id.* at 166, 121 S.Ct. 1335. The United States Supreme Court reversed holding that because burglary and murder are not the same offense, the right to counsel did not attach to uncharged crimes and defendant's confession was admissible on the issue of guilt in his murder case. *Id.* at 173, 121 S.Ct. 1335.

Unlike in *Cobb,* where police were investigating another crime in which the defendant was a possible suspect, here, police elicited information from Defendant on other crimes in which he was not a suspect, and on information that could be used against him in Defendant's pending case. Defendant made the incriminating statements without counsel present.

Here, Defendant was in custody for his pending charge on June 23, 2006. He had been indicted, was represented by counsel, and was awaiting trial. The Assistant Circuit Attorney went to a trial judge, without Defendant's counsel, and requested an order for Detective Neske to interview Defendant regarding other cases she was prosecuting. The order was granted and was worded to allow only Detective Neske to speak to Defendant regarding cases "not related" to the pending matter.

At the suppression hearing, Detective Neske testified it was his intention to question Defendant regarding his knowledge of how strikingly similar crimes to his pending charge are committed and to ask him to identify some suspects involved in these other similar cases. Detective Neske also testified that he and the Assistant Circuit Attorney spoke about what he would ask Defendant and that she would attend the meeting as well. The Assistant Circuit Attorney sent a copy of the order to the Public Defender's office, with no attorney's name on it. The State contends that no notice was required to be given to Defendant's Attorney.

At the interview, Detective Neske brought the trial court order which allowed him to question Defendant regarding cases unrelated to the pending charge. Defendant, reading the order as worded, may have been under the impression that none of the information he provided would be used against him in his pending case and therefore, not necessary to have his attorney on his pending case present. Defendant may have believed that any oral waiver he made would at best apply to future prosecutions regarding the information he provided. *See State v. Mayes,* 63

---

**4.** In *Cobb,* the Supreme Court relied on the "inextricably intertwined" language found in *Blockburger v. U.S.,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), a double jeopardy case, as the test for whether the Sixth Amendment right to counsel attaches to the new charges. Under *Blockburger,* "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 173, 121 S.Ct. 1335 (quoting *Blockburger,* 284 U.S. at 304, 52 S.Ct. 180).

S.W.3d 615, 633 (Mo. banc 2001)(*quoting McNeil v. Wisconsin*, 501 U.S. 171, 175, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991))(the Sixth Amendment right to counsel is offense specific and "cannot be invoked once for all future prosecutions").

During the interview, Defendant made numerous statements including some that discussed prior bad acts and his "modus operandi" regarding his con methods to steal by deceit. These are the statements the Assistant Circuit Attorney intended to use at trial in Defendant's pending case. The Assistant Circuit Attorney certainly would have been aware that any statements made during this interview could likely be incriminating to Defendant because she knew the subject matter of the conversation was similar to the pending case. As such, the State had an affirmative obligation to respect and preserve Defendant's right to counsel. *See Maine v. Moulton*, 474 U.S. 159, 171, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985)(the Sixth Amendment is violated when the state obtains incriminating statements by knowingly circumventing the defendant's right to counsel); *see also Massiah v. United States*, 377 U.S. 201, 206, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964)(the defendant was denied the basic protections of the right to counsel when federal agents deliberately elicited from him, post-indictment, incriminating words used against him at trial).

### Conclusion

The trial court did not err in suppressing Defendant's oral statements made at the June 23, 2006 interview. The statements were obtained in violation of Defendant's Sixth Amendment right to counsel as they related to the case in which he had been indicted and for which he had counsel. The trial court's ruling was not clearly erroneous. Points one and two are denied.

Judgment affirmed.

SHERRI B. SULLIVAN, and GEORGE W. DRAPER III, JJ: Concur.