Smith GADDY, Jr., et al., Appellants,

v.

PHELPS COUNTY BANK and Phelps County Bancshares, Inc., Respondents.

No. SC 82168.

Supreme Court of Missouri, En Banc.

June 13, 2000.

Alex Bartlett, Jefferson City, Roger A. Carnahan, Rolla, for Appellant.

John C. Aisenbrey, Howard H. Mick, Mark M. Iba, Kansas City, John Z. Williams, Rolla, for Respondent.

Thomas C. Walsh, Mark B. Hillis, St. Louis, Wade L. Nash, Jefferson City, Amicus Curiae for Missouri Bankers Ass'n.

## PER CURIAM.[1]

A majority of Phelps County Bank shareholders approved an amendment of the Bank's articles of agreement. Under the amended articles, a reverse stock split was authorized. As required by section 362.325,[2] the Missouri director of finance approved the amended articles and the reverse stock split. Various shareholders filed this action seeking relief primarily on the basis that the reverse stock split violated article I, section 28, of the Missouri Constitution. Respondents, Phelps County Bank and Phelps County Bancshares, as well as the Appellant shareholders, moved for summary judgment. The trial court entered summary judgment for the Bank and Bancshares. After opinion by the court of appeals, the case was transferred to this Court. *Mo. Const. art. V, sec. 10.* The judgment is affirmed.

Phelps County Bank is a private Missouri banking corporation with its principal place of business in Rolla, Missouri, Phelps County Bancshares, Inc., is a private Missouri corporation organized as a bank holding company. As of November 1997, Bancshares owned 25,856 shares (95.4%) of

---

1. This appeal was originally decided by the Court of Appeals, Southern District, in an opinion by the Honorable Kerry L. Montgomery. Portions of that opinion are incorporated without further attribution.

2. Statutory references are to RSMo 1994, unless otherwise indicated.

Bank's outstanding stock. On the same date, 66 minority shareholders, including Appellants, owned the remaining 1,244 shares of Bank's stock. Appellants owned a total of 92.5 shares, or 0.3%, of Bank's outstanding stock.

The amended articles and reverse stock split increased Bank's capital and, in effect, provided for a one–share–for–1,000–shares reverse stock split. The amendment also prohibited Bank from issuing any fractional shares. However, as to shareholders whose interest would be less than one share, the amendment provided a payment of $560 per share for each share of stock held immediately prior to the amendment's effective date.[3]

Appellants' first amended petition contained three counts seeking, respectively, injunctive relief, rescission, and damages. Each remedy was based upon the theory that the reverse stock split violated article I, section 28, of the Constitution in that the stock split constituted the taking of private property for private use without the consent of the owner. Appellant shareholders also raise in this Court contentions that the reverse stock split violated "fundamental principles of equity, fair dealing, and shareholder protection," that these transactions contravene section 362.170, which prohibits a bank from purchasing its own stock, and that neither section 362.325 nor any other statute governing Missouri banks authorizes a reverse stock split.

■■■ "When considering appeals from summary judgments, this Court will review the record in the light most favorable to the party against whom judgment was entered." *ITT Commercial Fin. v. Mid–Am Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. Banc 1993). "Our review is essentially *de novo.*" *Id.* "The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment." *Id.*

■■■ Appellants' argument rests on that part of article I, section 28, stating: "That private property shall not be taken for private use with or without compensation, unless by consent of the owner ...." The only case Appellants cite to support their argument is *In re Doe Run Lead Co.*, 283 Mo. 646, 223 S.W. 600 (1920), which was a proceeding for the dissolution of the Doe Run Lead Company. This Court reversed the judgment of dissolution after deciding that the result was a "pretended dissolution" (rather than a "real dissolution") under the statute providing for a voluntary dissolution of a corporation. *Id.* at 610.

The facts in *Doe Run* are vastly different from the instant case. There, the majority shareholders of Doe Run actually proposed a consolidation (as opposed to dissolution) of Doe Run with the St. Joseph Company. *Id.* at 609. Both corporations were engaged in the business of mining. At that time, a statute (section 3362, RSMo 1909)—long since repealed—granted the right of consolidation only to manufacturing corporations. *Id.* at 610. In effect, the "pretended dissolution" was an effort to circumvent the consolidation statute then in effect. The appellants in *Doe Run* were minority shareholders in that corporation. The majority shareholders proposed to permit all Doe Run shareholders to become shareholders in the St. Joseph Company or to receive fair value for their Doe Run shares. In either event, the St. Joseph Company would become the owner of the stock. *Id.*

As Appellants in this case correctly note, in *Doe Run* this Court relied on the predecessor section to article I, section 28, and said: "The stock which belongs to appellants is their private property, and private property (with certain exceptions not here invoked) cannot, without the owner's consent, be taken for private use by any majority, however great, nor by the payment

---

3. Appellants make no claim that the offering price of $560 per share is inadequate.

of any price, however large." *Id.* at 609. However, this statement seems only to be an emphatic restatement of the constitutional language. The claim of error in *Doe Run* alleged only "that this is not a bona fide dissolution proceeding such as is contemplated by the statute upon which this proceeding is based. . . ." *Id.* Deciding the dissolution was "pretended" rather than "real," this Court answered the issue raised and granted relief on that basis.

■ Appellants argue that article I, section 28, and *Doe Run* articulate a fundamental rule that, except for condemnation due to public necessity, a person's private property, such as bank stock, cannot be taken without that person's consent. In this case no such taking occurred. Upon purchasing their bank stock, Appellants consented to the majority shareholders' right to amend Bank's articles of agreement under section 362.325. This statute allows amendment of a bank's articles of agreement, with approval of a majority of the shareholders, to "increase . . . its capital stock to any amount" or "in any way not inconsistent with the provisions of this chapter." Such an amendment becomes effective after the director of finance is satisfied "that there has been a compliance in good faith with all the requirements of the law. . . ." Section 362.325.6. We reject Appellants' narrow reading of section 362.325; under Appellants' interpretation a reverse stock split would not be allowed unless specifically authorized by the statute. However, the plain words of the statute authorize capital changes unless specifically inconsistent with the statute. The reverse stock split does not seem to be inconsistent with any provision of chapter 362 or any other statute.

■ Appellants also argue that the transactions here violate section 362.170, which bars a bank from purchasing its own stock. Although the bank paid appellants for their fractional shares, the bank did not hold its own shares. It is difficult to see how a bank could effect an amendment of its articles to increase or decrease the bank's capitalization in these circumstances, as authorized by section 362.325, without some transactions of cash for shares. Reading the two sections together, it is clear that the bank has not purchased its own shares for a purpose that would violate section 362.170, and the capital changes are authorized by section 362.325.

■ "A shareholder in a corporation tacitly consents to any subsequent amendment of articles of incorporation designed to enable the corporation to conduct its business in a more profitable manner." *Midland Truck Lines v. Atwood,* 362 Mo. 397, 241 S.W.2d 903, 907 (1951). Applicable state laws are embodied in the charter of a corporation. *Id.* at 906. *See Shapiro v. Tropicana Lanes, Inc. .,* 371 S.W.2d 237, 241 (Mo.1963) (stating that corporations are subject to the requirements of the Missouri Constitution and statutory law and such laws become part of the corporation's charter).

In *State v. Holekamp Lumber Co.,* 340 S.W.2d 678, 681 (Mo. banc 1960), this Court explained the nature of share ownership:

"The charter of a corporation having a capital stock is a contract between three parties, and forms the basis of three distinct contracts. The charter is a contract between the state and the corporation; second, it is a contract between the corporation and the stockholders; third, it is a contract between the stockholders and the state." Cook on Corporations, Sec. 492. The third is also described as a contract of the stockholders inter sese.

As early as the *Doe Run* case, this Court recognized the above principles and said that a "real dissolution," as allowed by the voluntary dissolution statute then in effect, "is one of the incidents contemplated when the stock was bought," was "a part of the implied contract between the stockholders," and that such a dissolution "is not a violation of the contract." 223 S.W. at 610. Thus, if the majority shareholders in *Doe*

*Run* had pursued an actual dissolution under the statute in question, the minority shareholders' stock would have been "taken" with their consent on the theory that they contemplated the possibility of statutory dissolution when the stock was purchased. In this respect, *Doe Run* differs little from the instant case.

It is clear that chapter 362 was part of Bank's articles of agreement when Appellants purchased their stock. Appellants tacitly consented to any subsequent amendment of the articles of agreement under section 362.325.1. *Midland Truck Lines*, 241 S.W.2d at 907. Article I, section 28, is not implicated under the facts of this case because the reverse stock split did not take Appellants' stock without their consent.

Because these transactions were authorized by law, we reject Appellants' claim that the trial court's grant of summary judgment violated "fundamental principles of equity, fair dealing, and shareholder protection."

The judgment is affirmed.

All concur.