Danny T. JAMES, Respondent,

v.

Robert M. PAUL, Respondent, State Farm Fire and Casualty Insurance Company, Appellant.

No. SC 82867.

Supreme Court of Missouri, En Banc.

May 29, 2001.

Rehearing Denied July 24, 2001.

Phillip B. Grubaugh, Kansas City, for appellant.

J. Kent Emison, Robert L. Langdon, Lexington, Michael W. Blanton, Blue Springs, Thomas C. Locke, Independence, for respondents.

HOLSTEIN, Judge.

State Farm Fire and Casualty Company (State Farm) appeals from a summary judgment entered against it, as garnishee, in a garnishment proceeding filed in Jackson County circuit court by Danny T. James. State Farm also challenges the denial of its own motion for summary judgment against James. The claim arises from a homeowner's insurance policy held by Robert M. Paul. The case was transferred here after opinion by the Missouri Court of Appeals. *Rule 83.02; Mo. Const. art. V, sec. 10.* The trial court's judgment is reversed, and the cause is remanded for proceedings consistent with this opinion.

## I. FACTS

The basic facts of this case are not in dispute. Robert Paul and his wife, Kayleen, filed for a dissolution of marriage. A hearing was scheduled in Jackson County circuit court for June 9, 1989. In the interim, the couple separated, and Kayleen retained the family home in Independence and custody of their daughters. Paul moved to an apartment.

On the evening before the hearing, Paul, suspecting Kayleen of infidelity, traveled to her home after having consumed a considerable amount of beer. Once there, he peered through the living room window and witnessed his wife engaging in sexual relations with Danny James on the couch. Enraged, Paul tried unsuccessfully to break down the front door. Undaunted, he broke the living room window, but was injured in the process and was unable to enter. After retrieving a knife from his truck, Paul proceeded to the kitchen window. He broke the window and climbed into the house. He passed Kayleen, who was now in the kitchen, and proceeded to the living room, where he found James. Paul stabbed James in the abdomen three times. Both men were taken to the hospital but survived their injuries.

Paul was charged with first degree assault. He pleaded guilty to the offense on August 8, 1989. At the plea hearing, where Paul was represented by counsel, Paul admitted stabbing James. He indicated that he was pleading guilty because he was in fact guilty. When counsel interrogated Paul about whether he understood the constitutional rights he was waiving as well as the terms and conditions of the plea agreement, Paul replied that he did understand. The court reiterated these questions and asked Paul whether he was satisfied with his representation. Paul gave the same response and answered that he was satisfied with counsel's performance. The court found Paul's plea was made voluntarily and intelligently and that there was a factual basis supporting the assault charge. The court sentenced him to five years imprisonment but suspended the sentence, placing Paul on probation.

At the time of the stabbing, Paul had a homeowner's insurance policy with State Farm, which also provided personal liability coverage. Section II, Coverage L, of the policy provided in relevant part:

If a claim is made or a suit is brought against an insured for damages because

of bodily injury or property damage to which this coverage applies, caused by an occurrence, [State Farm] will:

1. pay up to our limit of liability for the damages for which the insured is legally liable; and

2. provide a defense at our expense by counsel of our choice.

The word "occurrence" is defined in the policy as: "[A]n accident ... which results in ... bodily injury ... during the policy period." Section II of the policy contained the following exclusions from liability coverage:

SECTION II EXCLUSIONS

COVERAGE L ... does not apply to:

(A) bodily injury or property damage

(1) which is either expected or intended by an insured; or

(2) to any person or property which is the result of willful or malicious acts of an insured.

Paul promptly informed State Farm of a potential claim and sought coverage for any claims James might assert against him. In a letter explaining that the incident was not an occurrence as defined in the policy and that it also triggered the exclusion provisions of the policy, State Farm denied coverage.

On February 9, 1992, James filed a personal injury claim in Jackson County circuit court. In his amended petition, he alleged careless and negligent conduct on the part of Paul. The specific conduct alleged was that while Paul was "incapacitated and unable to control the nature of his conduct," he "inflicted a knife wound upon DANNY T. JAMES." State Farm declined to defend. James and Paul then entered into a settlement agreement. It provided Paul would waive a jury trial, not present evidence and pay James $3,500. James agreed to limit any execution to the State Farm policy and further promised that if James was unsuccessful in the garnishment against State Farm, Paul would pay an additional $21,500.

Paul failed to appear for trial. The trial proceeded, and the court entered judgment for James in the amount of $285,000, prejudgment interest of $45,886.31, and costs. In its judgment entry, the court found, *inter alia:*

1. On June 8, 1989, [Paul] suffered from the medical conditions of alcoholism, adjustment disorder with depression, anxiety and obsessive disorder with the result of diminished mental capacity.

2. On June 8, 1989, [Paul] sustained physical injuries and was intoxicated, which, together with is [sic] medical disorders then affecting him, caused him to be in shock, and rendered [him] unable to control or appraise the nature of his conduct.

3. The violent events of June 8, 1989, during which [James] was injured were the result of sudden disinhibition and loss of control resulting from a combination of fragile borderline personality structure, acute adjustment reaction to emotional distress and intoxication with alcohol.

4. At the time ... [Paul] was not capable of appreciating or comprehending the nature or consequences of his conduct. [Paul] did not intend or expect for [James] to be injured.

After obtaining the judgment, James filed a garnishment action against State Farm. State Farm continued to deny coverage. Both parties filed motions for summary judgment, which the court denied. Then, each party filed a renewed motion for summary judgment. The court denied State Farm's motion and sustained that of James. In its order, the court ruled that the issue of coverage was resolved in the underlying tort action. State Farm, the

court explained, had a duty to defend Paul in the tort action, and its failure to do so amounted to a waiver of the coverage defense in the garnishment under the doctrine of estoppel *in pais*. Furthermore, the trial court held that the "law of the case doctrine" served to prevent State Farm from relitigating an issue it could have raised before in the initial personal injury action.[1]

State Farm appeals, asserting that neither the doctrine of equitable estoppel nor that of collateral estoppel bar it from litigating coverage in this garnishment action. Furthermore, it argues that the plea of guilty in the criminal case entitled it to summary judgment in the garnishment proceeding.

## II. STANDARD OF REVIEW

■ In considering an appeal from summary judgment, this Court reviews the record in the light most favorable to the party against whom judgment was entered. *Gaddy v. Phelps County Bank*, 20 S.W.3d 511, 513 (Mo. banc 2000). This Court reviews the record essentially *de novo*. *Id.* The propriety of summary judgment is purely an issue of law, and this Court need not defer to the trial court's ruling. *Id.* The ruling will be upheld on appeal if no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. *Bell v. May Dep't Stores Co.*, 6 S.W.3d 871, 873 (Mo. banc 1999).

## III. COLLATERAL ESTOPPEL AGAINST JAMES

■ Ordinarily, denial of a motion for summary judgment is an interlocutory or-

der and is not a proper point on appeal. Thus, it need not be addressed. *Wilson v. Hungate*, 434 S.W.2d 580, 583 (Mo.1968). But even though the ruling in question might normally be considered interlocutory, if the appeal is otherwise properly before the Court, and a question of law is almost certain to arise on retrial and has been fully briefed by the parties, the issue will be addressed as a matter of judicial efficiency and economy. *State v.. Schnick*, 819 S.W.2d 330, 334 (Mo. banc 1991); *State v. Gotthardt*, 540 S.W.2d 62, 67 (Mo.1976).

■ State Farm claims it is entitled to summary judgment in the garnishment action under the doctrine of collateral estoppel, also referred to as issue preclusion, because of Paul's plea of guilty in the criminal case. State Farm asserts that the conviction pursuant to the plea of guilty resolved the question of whether Paul's stabbing of James was intentional or willful, resulting in no coverage under the policy. This Court agrees.

■ Before giving preclusive effect to a prior adjudication under collateral estoppel principles, the Court must consider four factors: (1) whether the issue decided in the prior adjudication was identical to the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom estoppel is asserted was a party or was in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. *Oates v. Safeco Ins. Co. of Am.*,

---

1. Generally, the law of the case doctrine is a principle applicable to cases where there has been a prior appeal involving the same issues and facts. *Williams v. Kimes*, 25 S.W.3d 150, 153–54 (Mo. banc 2000). Here, there had been no prior appeal. Presumably, the trial court was referring to the doctrine of collateral estoppel, by which an issue determined in one action may not be relitigated in another action. *Shahan v. Shahan*, 988 S.W.2d 529, 532 (Mo. banc 1999).

583 S.W.2d 713, 719 (Mo. banc 1979). The doctrine of collateral estoppel will not be applied where to do so would be inequitable. *Id.* at 721. Each case must be analyzed on its own facts. *Id.* at 719 (describing the method employed in *Bernhard v. Bank of Am. Nat'l. Trust & Sav. Ass'n,* 19 Cal.2d 807, 122 P.2d 892 (1942)).

The first factor applicable to collateral estoppel is whether the issue in the earlier adjudication and that at issue in the present case are identical. Assault in the first degree requires that the actor attempt to kill or knowingly cause or attempt to cause serious physical injury to another. *Sec. 565.050.1.* By pleading guilty to that offense, Paul must have acted purposely or knowingly. *Secs. 565.050.1; 562.021.3; 564.011.1.* One who acts with a "purpose" to kill or "knowing" that his conduct was practically certain to result in serious physical injury acts intentionally or willfully. *See sec. 562.016.2, .3(2), (3).* The issue of intent was identical in both the civil and criminal cases, militating in favor of preclusion.

The second factor is whether the plea of guilty resulted in a judgment on the merits. Following the standard practice, the trial judge in the underlying criminal case ensured that the plea was voluntary by inquiring of Paul and his attorney. *Rule 24.02(c).* The trial court also inquired of the defendant, his attorney and the prosecutor regarding the facts in order to making a determination that a factual basis existed for the plea of guilt. *Rule 24.02(e).* These determinations were made on the merits of the facts presented and resolved the second factor in favor of collateral estoppel.

The third factor to be considered is whether the party to be estopped was a party to or in privity with a party to the prior adjudication. Our courts have stated that privity exists where the party sought to be precluded has interests that are so closely aligned to the party in the earlier litigation that the non-party can be fairly said to have had its day in court. *Cox v. Steck,* 992 S.W.2d 221, 224 (Mo.App.1999). This somewhat ambiguous description of privity has not always been easy to apply to every set of facts. Danger inheres in a formalistic definition of the word "privity." *State Farm Fire & Cas. Co. v. Fullerton,* 118 F.3d 374, 384 (5th Cir.1997) (citing Charles Alan Wright, Arthur R. Miller and Edward H. Cooper, 18 *Federal Practice and Procedure* § 4448 (1981)). The uncertainty associated with a formal definition of "privity" has caused the authors of the *Restatement (Second) of Judgments* to abandon the term "privity" altogether.[2] As a substitute, it identifies specific relationships with a criminal defendant that serve the same end as "privity." *Restatement (Second) of Judgments* sec. 85(2)(b). Among the specified relationships is a contractual relationship between a promisee, such as Paul, and a third party beneficiary, such as James. *Restatement (Second) of Judgments* sec. 56(1). James' claim is clearly that of a third party beneficiary of Paul's contractual relationship with State Farm. A judgment creditor stands in the shoes of the insured and has rights no greater and no less than the insured's rights would have been if the insured paid the judgment and then sought reimbursement from the insurer. *Greer v. Zurich*

---

**2.** In the *Restatement (First) of Judgments* (1942), sec. 83 and comment (a) discuss and define privity and privies within the context of issue preclusion. No comparable section appears in the *Second Restatement.* In fact, Table I, providing references to the *Second* *Restatement* sections from their *First Restatement* counterparts conspicuously leaves sec. 83 blank, one of only two on the page. *Restatement (Second) of Judgments,* Table I, at 324.

*Ins. Co.*, 441 S.W.2d 15, 30 (Mo.1969). Indeed, James makes no claim that his rights exist independent of the terms of Paul's liability policy. It is irrational to say that James has rights greater than if Paul were here attempting to enforce the insurance agreement. Equally clear is that the interest of Paul on the question of whether his attack on James was intentional is tightly aligned with the interest of James in this case.

Judge Wolff's separate opinion seizes upon *Restatement (Second) of Judgments* sec. 85, cmt. f., illus. 10, to argue the lack of privity in this case. The illustration indicates that the victim is not precluded by the criminal conviction from showing in a tort action against the assailant that the criminal act was negligent rather than intentional. Of course, the garnishment proceeding here is not a tort action against Paul but an action derivative of Paul's contract with State Farm. In any event, illustration 10 has been rejected in two of the three cases in which it has been cited. *See Aetna Cas. & Sur. Co. v. Jones*, 220 Conn. 285, 596 A.2d 414, 425 (1991); *Safeco Ins. Co. of Am. v. Yon*, 118 Idaho 367, 796 P.2d 1040, 1044 (1990); *Massachusetts Prop. Ins. Underwriting Ass'n v. Norrington*, 395 Mass. 751, 481 N.E.2d 1364, 1367 (1985). The illustration is also contrary to the majority of recent cases that analyze the issue and recognize the derivative nature of a third party's claim against an

insurer and the consequence that the party's rights against the insurer are no greater or less than the insured. *See State Farm Fire & Casualty v. Fullerton*, 118 F.3d 374, 385 (5th Cir.1997) (holding that privity stems from the derivative nature of the plaintiff's claim); *American Family Mut. Ins. Co. v. Savickas*, 193 Ill.2d 378, 250 Ill.Dec. 682, 739 N.E.2d 445, 453 (2000) (concluding the plaintiff's rights were entirely derivative of the insured's contractual rights, and the plaintiff can have no greater rights against the insurer than the insured). Thus, James, whose claim is derivative of Paul's contractual rights, is in privity with Paul.[3]

 The fourth factor identified in *Oates* is subject to some misunderstanding. The "full and fair opportunity to litigate the issue in the first suit" is not a second layer of privity analysis under which only those in privity who had actual notice and an opportunity to intervene may be bound by a prior adjudication. Rather, it is a shorthand description of the analysis required to determine if non-mutual collateral estoppel should be applied.[4] The principle of non-mutual collateral estoppel, as adopted in Missouri, permits use of a prior judgment to preclude relitigation of an issue even though the party asserting collateral estoppel was not a party to the prior case. *In re Caranchini*, 956 S.W.2d 910, 911 (Mo. banc 1997).

---

3. The due process argument asserted in Judge Wolff's separate opinion has time and again been rejected under similar circumstances to those at hand where privity exists. *State Farm Fire & Cas. Co. v. Fullerton*, 118 F.3d 374, 387 (5th Cir.1997) (citing *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 327 n. 7, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)); *State Mut. Ins. Co. v. Bragg*, 589 A.2d 35, 37 (Me. 1991); *Safeco Ins. Co. of Am. v. Yon*, 118 Idaho 367, 796 P.2d 1040, 1044–45 (1990); *Tradewind Ins. Co., Ltd., v. Stout*, 85 Hawai'i 177, 938 P.2d 1196, 1207 (1997).

4. This is confirmed by reading the authorities cited in *Oates*: Cunningham, *Collateral Estoppel: The Changing Role of the Rule of Mutuality*, 41 Mo.L.Rev. 521, 529 (Fall 1976); *Executive Towers, Inc. v. Board of Assessors*, 53 A.D.2d 463, 385 N.Y.S.2d 604, 612 (1976); *Johnson v. United States*, 576 F.2d 606, 614 (5th Cir.1978) (concluding that the offensive use of non-mutual collateral estoppel calls for special scrutiny in determining whether there was a full and fair opportunity to litigate an issue in the prior proceeding).

In determining whether non-mutual collateral estoppel will apply, the Court considers first whether the doctrine is being applied offensively or defensively. *See Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 329–30, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *State ex rel. O'Blennis v. Adolf*, 691 S.W.2d 498, 502 (Mo.App.1985). Defensive collateral estoppel generally involves a defendant invoking the doctrine to prevent a plaintiff from relitigating a fact decided against the plaintiff in earlier litigation that is necessary for the plaintiff to establish and carry his burden of proof. *O'Blennis*, 691 S.W.2d at 502; *see also Estate of Laspy*, 409 S.W.2d 725, 731 (Mo. App.1966) (a judicial determination of guilt held to collaterally estop the widow who killed her husband, the decedent, from inheriting). By contrast, offensive collateral estoppel normally involves the attempt by a plaintiff to rely on a prior adjudication of an issue to prevent the defendant from challenging a fact necessary to the plaintiff's case and on which the plaintiff carries the burden of proof. *Id.* Generally speaking, courts have been less inclined to allow offensive use of the doctrine rather than defensive when mutuality of parties is lacking. *Id.; see also Pruiett v. Wilform*, 477 S.W.2d 76, 80 (Mo.1972); *Ferguson v. Boyd*, 448 S.W.2d 901, 903 (Mo.1970); *Nichols v. Blake*, 418 S.W.2d 188, 190 (Mo. 1967); *Howard v. Riley*, 409 S.W.2d 154, 156 (Mo.1966); *Sullivan v. Spears*, 871 S.W.2d 75, 76 n. 1 (Mo.App.1994); *LaMartina v. Hannah*, 675 S.W.2d 444, 445–46 (Mo.App.1984).[5] In those cases, the courts held only that the plea of guilty is admissible in evidence, and the party making the plea must make an explanation of the plea.

■ Non-mutual collateral estoppel was first recognized in *Oates*. For obvious reasons, cases decided prior to *Oates* relied only on the evidentiary rule that the plea of guilty was admissible but not conclusive and did not take into account the non-mutual collateral estoppel analysis *Oates* now requires. This practice continued after *Oates*. Yet in each case except two the courts reached the result *Oates* dictates, because each involved a claimed *offensive* use of the doctrine. *Compare Estate of Laspy* (though a pre-*Oates* case, it held that collateral estoppel prevented the wife and convicted killer of the decedent from inheriting from his estate, a *defensive* use of a criminal conviction by the estate). After *Oates*, two cases, *Wallace v. Director of Revenue*, 786 S.W.2d 893 (Mo.App.1990), and *Curtain v.. Aldrich*, 589 S.W.2d 61 (Mo.App.1979), continued to cite the pre-*Oates* cases for the evidentiary rule, but failed to recognize they were dealing with *defensive* claims of collateral estoppel or engage in the analysis required by *Oates*. As a result, those cases create an arguable inconsistency with *Oates*. To the extent *Curtain* and *Wallace* are arguably inconsistent with *Oates*, they are overruled.

In the instant case, State Farm invokes collateral estoppel defensively. The primary reason for distinguishing between offensive and defensive use of collateral

---

**5.** Only two Missouri cases have permitted offensive non-mutual collateral estoppel. One was an attorney discipline case in which the respondent attorney was estopped from relitigating a judgment in a federal case in which she was sanctioned for unprofessional conduct. *In Re Caranchini*, 956 S.W.2d 910, 912 (Mo. banc 1997). In the other, the owner of a vehicle in which marijuana was found pleaded guilty to possession of the marijuana. He was later precluded from claiming he had no knowledge of the presence of the substance in the vehicle in a criminal activities forfeiture proceeding. *State v. Daniels*, 789 S.W.2d 243, 245 (Mo.App.1990). Missouri appears to follow the narrow use of offensive collateral estoppel laid down in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329–37, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

estoppel is the equitable nature of the doctrine. Here, one equitable concern is whether the failure to give preclusive effect to a plea of guilty will permit the party who pleaded guilty to assert facts contrary to the plea of guilty, thereby permitting the criminal defendant to profit from her own fraud or wrongdoing. *O'Blennis*, 691 S.W.2d at 504 (*citing Estate of Laspy*, 409 S.W.2d at 730 (Mo.App. 1966)). This concern, coupled with the fact that State Farm is attempting to use the doctrine defensively, suggests that the fourth factor does not weigh against collateral estoppel in this case. Because of the higher burden of proof and other procedural protections, a defendant in a criminal case has a full and fair opportunity to litigate the elements of an offense, including those relating to the culpable mental state.

Yet another equitable consideration relevant to the analysis of whether a "full and fair opportunity to litigate the issue" occurred is whether the criminal conviction resulted from a trial or a plea of guilty. Nearly all jurisdictions hold that a conviction after a criminal trial is preclusive as to issues actually determined by that trial as to the defendant and those in privity with the defendant, which includes those claiming under the defendant's liability insurance policy. *American Family Mut. Ins.*

*Co. v. Savickas*, 193 Ill.2d 378, 250 Ill.Dec. 682, 739 N.E.2d 445, 449 (2000); *Restatement (Second) of Judgments* sec. 85. The same is not true where there was a plea of guilty in the earlier case. Jurisdictions other than Missouri that have faced the precise issue in this case have split fairly evenly, the recent trend being to apply collateral estoppel defensively in a civil proceeding following a plea of guilty. The Fifth Circuit, applying Texas law, addressed a case nearly identical to this one in *State Farm Fire & Cas. Co. v. Fullerton*, 118 F.3d 374 (5th Cir.1997).

*Fullerton* observed that numerous cases treat a guilty plea with the same preclusive effect as a conviction following a full-blown trial.[6] *Fullerton* lists a number of policy reasons for giving a plea of guilty the same preclusive effect as a finding of guilt. Foremost is that the majority of states, including Missouri, cannot accept a plea of guilty or an *Alford* plea[7] in a felony case unless the defendant is found to be mentally competent, the plea is freely and voluntarily given, and a factual basis exists for the plea. *Fullerton*, 118 F.3d at 381; *see also Rule 24.02(c), (e)*.

To the contrary, an almost equal number of states make a distinction between the preclusive effect arising from a guilty plea as opposed to a full trial.[8] Many of

**6.** *Ideal Mut. Ins. Co. v. Winker*, 319 N.W.2d 289 (Iowa 1982); *State Mut. Ins. Co. v. Bragg*, 589 A.2d 35 (Me.1991); *State Farm Fire & Cas. Co. v. Sallak*, 140 Or.App. 89, 914 P.2d 697 (1996); *Bower v. O'Hara*, 759 F.2d 1117 (3rd Cir.1985) (Slovitar, J., dissenting); *United States v. $31,697.59 Cash*, 665 F.2d 903 (9th Cir.1982); *Colorado Farm Bureau Mut. Ins. Co. v. Snowbarger*, 934 P.2d 909 (Colo. App.1997); *State Farm Fire & Cas. Co. v. Groshek*, 161 Mich.App. 703, 411 N.W.2d 480 (1987); *State v. Gonzalez*, 273 N.J.Super. 239, 641 A.2d 1060 (1994), *aff'd*, 142 N.J. 618, 667 A.2d 684 (1995); *Merchants Mut. Ins. Co. v. Arzillo*, 98 A.D.2d 495, 472 N.Y.S.2d 97 (N.Y.App.Div.1984); *Commercial Union Ins.*

*Co. v. Mauldin*, 62 N.C.App. 461, 303 S.E.2d 214 (1983).

**7.** *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

**8.** These include *Aetna Cas. & Surety Co. v. Niziolek*, 395 Mass. 737, 481 N.E.2d 1356 (1985); *Rawling v. City of New Haven*, 206 Conn. 100, 537 A.2d 439 (1988); *Continental Cas. Co. v. Maguire*, 28 Colo.App. 173, 471 P.2d 636 (1970); *Teitelbaum Furs, Inc. v. Dominion Ins. Co.*, 58 Cal.2d 601, 25 Cal.Rptr. 559, 375 P.2d 439 (1962); *Brohawn v. Transamerica Inc. Co.*, 276 Md. 396, 347 A.2d 842 (1975); *Glen Falls Group Ins. Corp. v. Hoium*,

these cases rely on sec. 85 of the *Restatement (Second) of Judgments* cmt. b, indicating that a plea of guilty should not be given the same preclusive effect for collateral estoppel purposes given a finding of guilt. But the cases that rely on the *Restatement* fail to appropriately scrutinize the *Restatement's* rationale for estoppel. Specifically, the *Restatement* creates an unreasonable distinction between criminal pleas of guilty and criminal convictions at trial, without any real analysis. It fails to recognize that, in modern practice, a felony plea of guilty requires an evidentiary basis for the plea in which the facts are explored by the parties and the court, and a judicial determination is made with respect to the essential elements of the crime. *Ideal Mutual Ins. Co. v. Winker*, 319 N.W.2d 289, 296 (Iowa 1982).

As noted in *Fullerton*, the driving force behind issue preclusion is the concern for equity and sound public policy:

> Treating the question of intent as resolved will not only cut short declaratory judgment suits such as this one; it will also expedite the adjudication of victims' suits against an insured who has admitted his responsibility for a criminal act. As the results of the trial court here demonstrate, the danger of inconsistent judgments looms large. We recognize that criminal defendants sometimes enter guilty pleas for reasons other than the truth of the charges against them. But it is disquieting when a judicial system tolerates the continued incarceration of those defendants and at the same time, awards civil damages based on findings that those defendants did not commit all the elements of the crimes for which they are being punished.

294 Minn. 247, 200 N.W.2d 189 (1972); *Prudential Prop. & Cas. Ins. Co. v. Kollar*, 243 N.J.Super. 150, 578 A.2d 1238 (1990); *Stidham v. Millvale Sportsmen's Club*, 421 Pa.Su-

*Id.* at 386–87. Missouri's rules of criminal procedure ensure courts accept guilty pleas only under appropriate circumstances. Therefore, the judicial system's interest in consistent judgments does not automatically give way when a plea of guilty is entered. So, consistency as well weighs in favor of preclusion in this case.

James argues that the policy of consistency of judgments having preclusive effect is not advanced by applying collateral estoppel here because, in this case, there are already two inconsistent judgments, the criminal and the later civil judgment against Paul. The argument is sophistry. The civil judgment was, in effect, a default judgment where both the plaintiff and defendant had parallel interests to advance in obtaining a fact finding inconsistent with the criminal judgment. Both Paul and James carefully avoided seeking any judicial relief against State Farm on the coverage question until the default judgment had been entered. As will be discussed in Part IV, the determination of questions touching on culpability in the civil judgment against Paul were not entitled to any preclusive effect against State Farm under principles of collateral estoppel. Indeed, the doctrine of collateral estoppel was designed, in part, to eliminate the very sort of legal maneuvering that occurred here, leading to superficially inconsistent findings. To fail to apply the doctrine in favor of State Farm is virtually certain to encourage continued legal stratagems designed to create inconsistent factual adjudications.

Other equitable arguments support giving Paul's guilty plea preclusive effect. If issue preclusion is not permitted, Paul will, in effect, be insulated by an insurer from

per. 548, 618 A.2d 945 (1992); *Safeco Ins. Co. v. McGrath*, 42 Wash.App. 58, 708 P.2d 657 (1985).

the full brunt of economic responsibility resulting from his admittedly intentional criminal act. This runs contrary to the public policy of Missouri. *State Farm Fire & Cas. Co. v. Caley*, 936 S.W.2d 250, 253 (Mo.App.1997). Both James and Paul stood to profit from Paul's duplicity in admitting intentional wrongdoing in the criminal proceeding [9] while, in effect, denying it in the present case. Applying collateral estoppel in this situation serves to prevent the potential of collusive litigation as well as promoting the other policies of finality, consistency and judicial economy discussed above.

As previously noted, application of collateral estoppel ultimately depends on principles of fairness derived from the facts of each case. The record here includes the transcript of the plea of guilty that was attached to the motion for summary judgment. That transcript includes a finding by the criminal trial judge that Paul voluntarily and intelligently pleaded guilty to the offense of first degree assault of James. James filed no response attacking the validity of the plea of guilty. Once the transcript was filed establishing the factual determination by a judgment that Paul's conduct was intentional, James could not rest on mere allegations or denials, but he was required to show by affidavit or otherwise that State Farm was not entitled to summary judgment. *ITT Commercial Finance v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993); *Economy Fire & Casualty Co. v. Haste*, 824 S.W.2d 41, 46 (Mo.App.1991); *Rule 74.04(c)*. To overcome the preclusive effect of the facts judicially determined by Paul's plea, it was incumbent on James not just to produce a psychiatrist's affidavit, made four years after the plea of guilty,

alleging that Paul was mentally unable to intentionally stab James. James was also required to show Paul's plea of guilty itself was in some respect tainted so as to make application of collateral estoppel inequitable.

At the plea hearing, Paul denied any history of mental illness except counseling related to his marital breakup. The only hints of such illness were his statements that he "just lost control," "became enraged," and "snapped" when he saw his wife having sex with James. The statements, taken in context and in conjunction with his denial of any mental illness, are insufficient to undermine confidence in the plea of guilty. By his plea of guilty and conviction, Paul admitted his culpability for his role in the criminal violation. *Cork v. St. Charles County*, 10 S.W.3d 608, 609 (Mo.App.2000). There was absolutely no evidence that Paul's plea was involuntary, that he was unduly pressured into entering the plea, that he was not effectively represented by counsel, or that any other reason existed undermining confidence in the plea of guilty or the determination of a factual basis for that plea. This Court should not speculate that Paul had some hidden reason or felt some unstated pressure to plead guilty, when such fact was not supported by an affidavit or other proof in the trial court. Application of the doctrine of collateral estoppel to a plea of guilty as used defensively in this case is not inequitable, given the record with which the Court is presented.

## IV. ESTOPPEL AND COLLATERAL ESTOPPEL AGAINST STATE FARM

James claims that State Farm is equitably estopped from claiming the

---

**9.** The transcript of the plea hearing discloses that James was present at some of the criminal proceedings, consented to the disposition, and was a partial beneficiary of the plea in that restitution to James was one of the conditions of probation imposed by the trial court. James does not contest the accuracy of the matters stated in the transcript.

benefit of the criminal adjudication because it violated its duty to defend Paul when he filed his civil suit alleging negligence. James relies on *McCormack Baron Mgmt. Servs., Inc. v. American Guar. & Liab. Ins. Co.*, 989 S.W.2d 168, 170 (Mo. banc 1999), providing that, ordinarily, the duty to defend is determined by comparing the policy provisions with the allegations of the petition. But where the insured made a judicial admission as part of a prior judicial determination in a criminal case that the insured's conduct was intentional, the general rule announced in *McCormack* does not give rise to estoppel. Estoppel, being an equitable doctrine, applies where the refusal to defend was unjustified under the circumstances. State Farm justifiably relied on the prior judicial admission and determination in concluding it had no coverage and, thus, no duty to defend Paul. For State Farm to have defended Paul on the ground that his conduct was intentional rather than negligent would have created an irreconcilable conflict with the insured. *Cox v. Steck*, 992 S.W.2d 221 (Mo. App.1999). Therefore, the doctrine of equitable estoppel does not apply to prevent State Farm from asserting the absence of coverage.

 James also argues that any preclusion resulting from the plea of guilty was negated by the judgment in the civil case and that State Farm is now collaterally bound by the civil judgment. As previously noted, offensive use of collateral estoppel, as proposed by James, is disfavored. In addition, there is a lack of privity between Paul and State Farm in the civil case. In the civil action, Paul's earlier plea of guilty left little question regarding the issue of his liability to James. Indeed, he agreed to make restitution to James in that case. The only real question was the extent of damages at issue. Paul's only defense was to enter

into a sec. 537.065 settlement agreement designed to shift the bulk of any assessment of damages to his insurer while minimizing his personal exposure to damages. Both Paul and James had identical interests in having Paul's conduct declared unintentional so as to shift the obligation of paying damages to State Farm. State Farm's interest in relying on the criminal plea and the coverage exclusion were not aligned with either that of James or Paul in the civil action. As a result, the privity necessary to impose collateral estoppel against State Farm was absent. Finally, the inherent conflict between State Farm and Paul prevented State Farm from effectively asserting its policy defenses in the civil action until the garnishment proceeding. For all these reasons, it would be inequitable for State Farm to be collaterally estopped from asserting its coverage defenses in the garnishment proceeding.

## CONCLUSION

The summary judgment granted in favor of James in the garnishment proceeding is reversed because the trial court failed to give due regard to the preclusive effect of the prior criminal judgment. The criminal conviction foreclosed Paul and any party claiming through him from asserting that his conduct was not intentional. The trial court erred in holding that equitable and collateral estoppel precluded State Farm from asserting its coverage exclusion. There is no genuine issue of material fact as to whether Paul acted intentionally. The cause is remanded to the trial court for entry of judgment in favor of State Farm in the garnishment proceeding.

PRICE, C.J., LIMBAUGH and BENTON, JJ., concur.

WHITE, J., concurs in part and dissents in part in separate opinion filed; WOLFF, J., concurs in part and dissents in part in separate opinion filed.

WALLACE, Sp. J., concurs in opinions of WHITE and WOLFF, JJ.

LAURA DENVIR STITH, J., not participating.

WHITE, Judge, concurring in part and dissenting in part.

## I.

I concur with the majority opinion's conclusion that summary judgment does not lie by virtue of estoppel to preclude State Farm Fire and Casualty Insurance Company (State Farm) from raising its coverage defense in a subsequent garnishment proceeding. I respectfully dissent, however, from the principal opinion's analysis that defensive collateral estoppel may be applied by State Farm using Robert Paul's (Paul) guilty plea to deprive Danny James (James) of his day in court to challenge an intentional act exclusion in a homeowner's policy. I would remand to the garnishment court for a full proceeding on the merits.

## II.

The majority opinion grants State Farm summary judgment concluding the determination of liability, or "intent," was made in Paul's plea bargain and is dispositive of insurance coverage. If collateral estoppel is to be applied by equating the factual issue of intent with the issue of coverage, then all four factors of the doctrine must be satisfied and it must be shown that Paul's "intent" was fully litigated in the plea bargain proceeding. What the princi-

pal opinion fails to adequately address when using Paul's guilty plea to trigger the insurer's exclusion clause is that plea bargains do not result from a full litigation of the underlying factual issues.[1] Comment (b) to the *Restatement (Second) of Judgments*, section 85, highlights this distinction and states in pertinent part:

> A defendant who pleads guilty may be held to be estopped in a subsequent civil litigation from contesting the facts representing the elements of the offense. *However, under the terms of this Restatement such an estoppel is not a matter of issue preclusion, because the issue has not actually been litigated, but is a matter of the law of evidence beyond the scope of this Restatement.* (Emphasis added).

The principal opinion attacks the *Restatement's* position by claiming it fails to appropriately scrutinize the rational for estoppel. The opinion discusses, at length, the equal split of authority in applying the *Restatement's* rule in outside jurisdictions; however, it curiously ignores the jurisdiction with binding authority on this issue, namely Missouri precedent. This Court has consistently followed the reasoning behind comment (b) that "[w]ith regard to collateral estoppel ... the established rule is that the judgment in the prior adjudication operates only as to the issues, points, or questions actually litigated and determined."[2] With regard to a criminal guilty plea specifically, comment (b) correctly explains that this is an issue of evidence, not

1. When recognizing the use of non-mutual collateral estoppel, this Court acknowledged that the full and fair litigation factor must be satisfied in order to dispense with the doctrine of mutuality. *Oates v. Safeco Ins. Co. of America*, 583 S.W.2d 713, 719 (Mo.1979) ("Fairness is the overriding consideration in determining whether or not to apply the Doctrine of Mutuality."). *See also Parklane Ho-*

*siery Co., Inc. v. Shore*, 439 U.S. 322, 329–30, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). While offensive use of the doctrine may be a less favored approach, this does not excuse the satisfaction of this requirement by those parties employing the doctrine defensively.

2. *American Polled Hereford v. City of Kansas City*, 626 S.W.2d 237, 241 (Mo.1982).

issue preclusion. The well-settled evidentiary rule in Missouri is that while a guilty plea is admissible in a subsequent civil proceeding against the one who made it, it is not conclusive, and it may be explained, thus relitigated.[3]

A guilty plea is a declaration against interest, not independent, objective evidence of guilt.[4] Without full litigation of particularized issues, such as the elements of the crime charged, a subsequent opposite determination in a civil suit does not necessarily generate an inconsistent judgment. Even a fact determined in a full criminal jury trial must be distilled to a specific, unambiguous, and necessary finding of one particular fact, or finding on one specific issue, for that fact or issue to be barred from relitigation.[5] In *State v. Simmons*, this Court observed that because it is usually impossible to discern a specific basis upon which a jury reaches its verdict,

collateral estoppel will rarely be available in a criminal context.[6]

The principal opinion misreads this Court's decision in *Oates v. Safeco Ins. Co. of America.*[7] Acceptance of the doctrine of non-mutual collateral estoppel is not inconsistent with and does not eliminate the long-standing evidentiary rule that a guilty plea is a declaration against interest, admissible, but not conclusive, in a subsequent civil proceeding. In fact, the liberalizing of the doctrine of collateral estoppel by the elimination of the mutuality requirement weighs in favor of preservation of such evidentiary rules to ensure the full and fair litigation of the relevant issues. This case exemplifies the rationale underlying the *Restatement's* position that this is an issue of evidence not issue preclusion, because the record of Paul's plea proceeding is devoid of evidence that there was a full and fair litigation of the factual element of "intent."

---

3. *Pruiett v. Wilform*, 477 S.W.2d 76, 80 (Mo. 1972); *Ferguson v. Boyd*, 448 S.W.2d 901, 903 (Mo.1970); *Nichols v. Blake*, 418 S.W.2d 188, 189–90 (Mo.1967); *Howard v. Riley*, 409 S.W.2d 154, 156 (Mo.1966). *See also Wallace v. Director of Revenue, State of Mo.*, 786 S.W.2d 893, 895 (Mo.App.1990) (overruled on other grounds by *Riche v. Director of Revenue*, 987 S.W.2d 331, 335–36 (Mo. banc 1999)); *State ex rel. O'Blennis v. Adolf*, 691 S.W.2d 498, 503 (Mo.App.1985); *Curtain v. Aldrich*, 589 S.W.2d 61, 65 (Mo.App.1979); *State Farm Mut. Auto. Ins. Co. v. Worthington*, 405 F.2d 683 (8th Cir.1968), *affirming, Worthington v. Stevens*, 294 F.Supp. 349 (W.D.Mo. 1967); *Cooper v. National Life Ins. Co. of the USA*, 212 Mo.App. 266, 253 S.W. 465, 467 (1923); *Zimmerman v. Southern Surety Co.*, 241 S.W. 95, 96–97 (Mo.App.1922); Annotation: Conviction or Acquittal as Evidence of the Facts on which it was Based in Civil Action, 18 A.L.R.2d 1287, 1311.

4. See footnote 2. *See also State v. Spica*, 389 S.W.2d 35, 47 (Mo.1965).

5. *State v. Simmons*, 955 S.W.2d 752, 760 (Mo. banc 1997); *State v. Nunley*, 923 S.W.2d 911, 922 (Mo. banc 1996); *King General Contrac-*

*tors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints*, 821 S.W.2d 495, 500 (Mo. banc 1991); *State v. Johnson*, 598 S.W.2d 123, 125–26 (Mo. banc 1980); *State v. Booker*, 540 S.W.2d 90, 93 (Mo.App.1976). *See also Ashe v. Swenson*, 397 U.S. 436, 445, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

6. *Simmons*, 955 S.W.2d at 760. *See also State ex rel. Westfall v. Mason*, 594 S.W.2d 908, 913 (Mo. banc 1980); *Booker*, 540 S.W.2d at 93; *United States v. Tramunti*, 500 F.2d 1334, 1346 (2d Cir.1974); *United States v. Cioffi*, 487 F.2d 492, 498 (2d Cir.1973). The principal opinion cites to *Estate of Laspy*, 409 S.W.2d 725, 731 (Mo.App.1966), for the proposition that defensive use of collateral estoppel is allowed in conjunction with judicial determinations of guilt. That determination, however, was based upon a full jury trial with specific instruction on the individual elements of the crime, including "intent." It did not involve a plea bargain without reference to this factual element.

7. 583 S.W.2d 713 (Mo. banc 1979).

Reviewing Paul's plea bargain transcript, it is clear that the trial court met the requirements of Rule 24.02 by attempting to ascertain if the defendant understood the nature of the charge and penalties to which the plea was offered. However, the rule does not require any specific evidence to be adduced on the individual elements of the crime, and absolutely nowhere in the transcript does there appear conclusive evidence of Paul's "intent" that could constitute full litigation of that factual issue.

Whether an insured expected or intended injury is a question of fact, and the burden is on the insurer to establish that an exclusion bars coverage.[8] For an exclusion for expected or intended conduct to bar coverage, the insurer must not only show that the insured intentionally acted, but also that the insured expected or intended the result that occurred.[9] In the plea bargain proceeding, the judge never questioned the defendant, or his attorney, as to whether or not Paul acted with the intent to cause injury, or intended the result that occurred. In fact, the recitation of facts offered by Paul tends to reflect exactly the opposite.

Paul's rendition of the incident included such statements as "I just lost complete control," "I struck out at him," and "I snapped." Losing control and striking out at someone falls short of establishing an intentional act and an expected and intended result. While these factual statements support the fact that Paul acted, they do not conclusively resolve the issue of intent. Expert testimony in the civil negligence

proceeding demonstrated that Paul suffered from diminished capacity at the time of the incident and was not capable of appreciating or comprehending the nature and consequences of his conduct. The trial court concluded, "Defendant, Robert M. Paul, *did not intend or expect* for Plaintiff, Danny T. James, to be injured." (Emphasis added).

The majority opinion also appears to confuse the fully litigated requirement with the requirements for accepting a guilty plea. A plea, offered freely and voluntarily by a competent individual with a factual basis does not equate with every factual issue being fully and fairly litigated and being barred from relitigation. Only in the civil negligence case was there a specific determination of this particularized factual finding, which at the minimum leaves the issue one of disputed fact not appropriate for summary judgment.

### III.

State Farm's summary judgment motion only provides a copy of the insurance policy, the affidavit of a claim superintendent stating the policy was in effect, and the transcript of the plea proceeding. The motion does not include any additional evidence relating to a determination of Paul's intent. State Farm concedes in its brief that the issue of intent has not been resolved by asking this Court to infer it. State Farm cites to several court of appeals cases to support the proposition that intent to harm is inferred if the natural and probable consequences of an act are to produce harm.[10] The distinguishing factor

**8.** *American Family Mut. Ins. Co. v. Pacchetti,* 808 S.W.2d 369, 370–71 (Mo. banc 1991).

**9.** *Id.* at 371.

**10.** *State Farm Fire & Casualty Co. v. Caley,* 936 S.W.2d 250, 252 (Mo.App.1997); *B.B. v. Continental Ins. Co.,* 8 F.3d 1288, 1290 (8th

Cir.1993); *Mid–Century Ins. Co. v. L.D.G.,* 835 S.W.2d 436, 437 (Mo.App.1992); *Economy Fire and Casualty Co. v. Haste,* 824 S.W.2d 41, 44 (Mo.App.1991); *Farm Bureau Town & Country Ins. Co. v. Turnbo,* 740 S.W.2d 232, 236 (Mo.App.1987); *Travelers Ins. Co. v. Cole,* 631 S.W.2d 661, 664 (Mo.App.1982); *Truck*

between these cases and the one before this Court is that in all of these cited cases the trial court made a determination that the insured's conduct was intentional rather than negligent. Moreover, when reviewing a motion for summary judgment, it is the non-movant who receives the benefit of all reasonable inferences from the record, and facts set forth in support of a party's motion are only taken as true if not contradicted by the non-moving party's response.[11]

In James' renewed motion for summary judgment in the garnishment court, he presented evidence of the trial court's determination of Paul's negligence and renewed the previous motion's arguments that included the affidavit of expert psychiatrist John M. Schmitz, M.D. Dr. Schmitz and the trial court both concluded Paul was incapable of comprehending the nature or consequences of his actions at the time of the incident and that he did not intend or expect James to be injured. Consequently, there was substantial evidence contradicting the facts set forth in State Farm's summary judgment motion. State Farm has the burden of proof and, under these facts, cannot establish that there is no genuine dispute as to the material facts to support its motion.[12]

Since collateral estoppel does not apply, and the subsequent civil proceeding resulted in a determination of negligence, at minimum there is a dispute over the material fact of "intent," and summary judgment for State Farm is not appropriate. I would remand to the garnishment court for a full proceeding on the coverage issue following the well-settled evidentiary rule of this state that a guilty plea is admissible

in a subsequent civil proceeding, but is not conclusive and may be explained.

WOLFF, Judge, concurring in part and dissenting in part.

I concur in the separate opinion of Judge White, and write separately to emphasize what I believe are basic due process principles applicable to this case.

The principal opinion holds that Danny James, the stabbing victim, is bound by the finding of intent on the guilty plea in the state's criminal case against Paul, the man who stabbed him. It is a matter of fundamental due process that one is not bound by a judgment to which he was not a party or adequately represented by a party. *See Hansberry v. Lee,* 311 U.S. 32, 40–41, 61 S.Ct. 115, 85 L.Ed. 22 (1940); JACK H. FRIEDENTHAL, MARY KAY KANE & ARTHUR R. MILLER, CIVIL PROCEDURE § 14.13 (3d ed.1999).

Danny James, the stabbing victim, was not a party to the state's case against Paul. The only theory that would conform the majority opinion to due process is that the victim's interests were represented by his assailant in the criminal case.

If that seems strange, it is. Only an excessively flexible notion of "privity" would sound like an explanation—that James is bound because he is claiming through the coverage that State Farm provides to Paul. The majority opinion relies on the Restatement (Second) of Judgments, section 85(b)(2), to establish privity between James and Paul; however, the position taken by the principal opinion is specifically rejected in comment f of that section. Illustration No. 10 in comment f of the Restatement (Second) of Judg-

---

11. *Ins. Exchange v. Pickering,* 642 S.W.2d 113, 116 (Mo.App.1982); *Hanover Ins. Co. v. Newcomer,* 585 S.W.2d 285 (Mo.App.1979).

11. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993).

12. *Id.* at 381.

ments, section 85, is virtually the same as this case:

> D inflicts a blow on X as a result of which X dies. D is convicted of intentional homicide. P, administrator of X's estate, brings an action against D for wrongful death, alleging D's act was negligent. I had previously issued a policy of liability insurance to D, insuring liability for D's negligent acts but excluding intentional acts. In P's action against D, P is not precluded by the criminal conviction from showing that D's act was negligent rather than intentional.

The appendices to the Restatement (Second) of Judgments cite numerous cases, some that agree and some that disagree with this position. But as far as I can determine, the Restatement has not changed its position on this point, and the Restatement position more closely conforms to due process norms than the cases that reject the Restatement position.

On due process, the United States Supreme Court in *Hansberry v. Lee*, 311 U.S. 32, 40–41, 61 S.Ct. 115, 85 L.Ed. 22 (1940), is particularly instructive. Whether one is represented by another in a previous adjudication depends on whether their interests are the same or in conflict. *Id.* at 43, 61 S.Ct. 115; *see also American Polled Hereford v. City of Kansas City*, 626 S.W.2d 237, 241 (Mo.1982). Paul, in the criminal case, was representing only his own interests. His goal was to emerge from the criminal case with the minimum of consequences. Needless to say, Paul was not protecting James' interests when Paul stabbed James. It is likewise hard to fathom that Paul was representing James' interests when Paul pled guilty to stabbing James. In the civil negligence action, Paul and James may both have been interested in proving the factual element of negligence, but "privity is not established sim-

ply because the parties are interested in the same question or in proving or disproving the same state of facts." *Clements v. Pittman*, 765 S.W.2d 589, 591 (Mo. banc 1989).

In the plea proceeding, it cannot be said that James' interests were adequately represented by Paul for James to have had his day in court.

In short, I would remand this case to the circuit court for a hearing in which both James and the insurance company have their day in court. The issue is whether Paul's injury to James was inflicted intentionally, as the insurance company contends, or whether it was other than intentional, which would invoke the coverage of the insurance policy.